Commonwealth *v.* Gilmore, Appellant.

Submitted January 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

*Ricardo C. Jackson,* for appellant.

*Peter J. Smith* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1972:

Following his conviction by a jury of murder in the first degree and sentence to life imprisonment, William Gilmore filed this appeal. We affirm.

The sufficiency of the evidence to sustain a conviction of murder in the first degree is not challenged, however, after reading the record we are completely satisfied it was more than ample to warrant the conviction.

From the evidence, the jury could find that Gilmore and a companion, John Waddy, assaulted and robbed Dr. Eric Osterberg on the property of a Greyhound Bus Station in Philadelphia and from the injuries received the victim died two days later.

It is first maintained Gilmore's conviction should be set aside because his arrest was without probable cause. The pertinent record facts are as follows.

About 11:45 p.m., on April 25, 1969, Osterberg was discovered lying fatally injured in a stairwell near the maintenance area of the bus station, and the police were immediately notified. The victim was bleeding from the head and nose; his trousers were open and his empty wallet was found nearby on the stairs. At the time, the police were already seeking out two men for three other attacks and robberies committed in the same stairwell on previous dates, all within sixteen days of the Osterberg attack (one occurred just six days before).

Victims of these attacks had informed the police that they were attacked by two men; one of whom had a razor or a knife. One of these victims said that in the course of the attack and robbery, one of the felons threatened and then slashed him with a razor while the other frisked him and attempted to pull down his trousers. The wallet and a Diner's Club Card of this victim were found after the attack in a trolley car which ran over a route, designated No. 10, between 63rd and Malvern Streets and Central City. Each of the victims of the attacks occurring before the Osterberg incident described the felons in this manner: "The No. 1 man was short, heavy and very effeminate in his manner. The second was tall, thin and very effeminate. Both were Negro males in their early twenties." During questioning of the operator of the trolley car in which the wallet and Diner's Club Card were found, the police learned that two men fitting this description were passengers on the trolley car shortly before these articles were found and that the same men had been observed as passengers on the route, designated No. 10, ten or twelve times previously. As a result, the police conducted a stake-out of the trolley cars running over Route No. 10 and the various stops. On April 27th, the police took Gilmore and Waddy into custody without a warrant as they were standing at 62nd Street and Lansdowne Avenue, one of the Route No. 10 trolley car stops. They fit the description in every detail of the men the police were seeking in connection with the bus station attacks.[1]

The events, as above related, gave the police probable cause to take Gilmore into custody. Assuming that the

---

[1] As Gilmore was placed in a police vehicle, he dropped a razor. During questioning at police headquarters, he made an incriminating statement, and the evidentiary use of this statement at trial is *not* now questioned.

24

description of the perpetrators of the bus station crimes given to the police by the victims was "fragmentary" as it is now argued, all of the relevant information in the hands of the police at the time of Gilmore's arrest must be considered and the totality of this information was certainly sufficient to warrant a reasonable man in the belief that Gilmore had committed the crimes. The arrest, therefore, was lawful. In dealing with "probable cause", we deal with probabilities as the name implies. There is a material difference between the sufficiency of the evidence to convict and that sufficient to constitute probable cause. Cf. *Commonwealth v. Marino,* 435 Pa. 245, 255 A. 2d 911 (1969).

The facts in the instant case are substantially different from those in *Commonwealth v. Berrios,* 437 Pa. 338, 263 A. 2d 342 (1970), relied upon by the appellant.

The remaining claim of error that evidence of the prior attacks and robberies on the bus station property was erroneously admitted in the trial of the instant case is likewise devoid of merit. This evidence was properly admitted to show plan and design. *Commonwealth v. Smith,* 443 Pa. 151, 277 A. 2d 807 (1971).

Judgment affirmed.

Mr. Justice Nix took no part in the consideration or decision of this case.