391 A.2d 653

COMMONWEALTH of Pennsylvania

v.

**Bernard MORRIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 22, 1976.

Decided July 12, 1978.

Steven Morley, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

## OPINION

PER CURIAM:

The six Judges who decided this case being equally divided, the judgment of sentence is affirmed.

VAN der VOORT, J., files an opinion in support of affirmance in which JACOBS, President Judge, and PRICE, J., join.

SPAETH, J., files an opinion in support of reversal in which HOFFMAN and CERCONE, JJ., join.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

VAN der VOORT, Judge:

Appellant Bernard Morris was arrested on January 10, 1975, by a member of the Philadelphia Housing Police, in connection with robberies that had been committed on January 2 and January 7 of 1975. Appellant's motion for severance was denied, and appellant was tried July 1–8, 1975, for both offenses. A jury found appellant guilty of both robberies, and appellant was sentenced on October 6, 1975 to consecutive one to three year terms of imprisonment. The case is before us on direct appeal from the judgments of sentence.

Appellant first argues that the lower court erred in denying appellant's request for a prior statement of a complaining witness. On cross-examination, the victim of the second robbery mentioned that she had given an oral statement to the Philadelphia Housing Police, and had seen one of the Housing Policemen write it down. Appellant's attorney asked for a copy of the statement, but let the matter

drop when the Assistant District Attorney said that he did not have a copy of any such report. A witness who testified later in the trial mentioned on cross-examination that he had seen a copy of a report concerning "the second robbery", a robbery involving a woman on an elevator in the Cambridge Apartments. Appellant's attorney asked to see a copy of the report, but the trial judge deferred ruling on the request at that time. On further questioning of the witness, it was brought out that the witness did not know who had written the report and did not actually know who had been the victim in the report.[1] Appellant's attorney then let the matter drop, and no ruling was ever made concerning the earlier request. Under the circumstances, there was no error on the part of the trial court in not granting the request for an obscure document.

Appellant's second argument is that the lower court erred in denying his motion to sever the trials for the two robberies. It is clear that the consolidation of indictments which charge separate and distinct offenses is a matter within the discretion of the trial judge, whose conclusion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Patrick,* 416 Pa. 437, 206 A.2d 295 (1965). In *Commonwealth v. Irons,* 230 Pa.Super. 56, 326 A.2d 488 (1974), our court interpreted the Supreme Court's *Peterson* decision[2] to mean that there would be no "abuse of discretion" if the crimes were easily separable in the minds of the jurors, and if evidence of one crime would have been admissible at a separate trial for the other crime.[3] An examination of the notes of testimony in the case before us reveals

1. The Assistant District Attorney later offered a copy of a report involving a third victim, a report that might have been the one seen by the witness, but the lower court sustained a defense objection and instructed the jury to disregard any mention by counsel regarding any report.

2. *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973).

3. See generally *Commonwealth v. Mullen,* 228 Pa.Super. 207, 211–12, 324 A.2d 410 (1974).

that the two crimes were clearly delineated for the jury and were not likely to cause confusion; a review of the case law reveals that evidence of either robbery would have been admissible at a trial for the other robbery.

Although the Supreme Court reversed in *Commonwealth v. Burdell,* 380 Pa. 43, 110 A.2d 193 (1955) because different types of crimes were involved, the court there stated that evidence of separate, distinct crimes would be admissible where the former alleged crimes "are of the same nature as the one under trial and indicate a general intent or design on the part of the accused to conduct, for example, a series of similar robberies, or murders, or sex offenses, or poisonings . . . or the like; in other words, the prior criminal act or acts are evidential only if clearly constituting part of a chain, system, composite plan or scheme." 380 Pa. at 47, 110 A.2d at 195. In *Commonwealth v. Raymond,* 412 Pa. 194, 194 A.2d 150 (1963), *cert. denied,* 377 U.S. 999, 84 S.Ct. 1930, 12 L.Ed.2d 1049 (1964), the appellant had been convicted of murdering a person whom he had lured to a particular address under the pretext of helping that person find a prostitute. The Supreme Court upheld the lower court's admission of evidence of an assault which the appellant had committed under similar circumstances on another person one week prior to the murder. The court stated that "proof of the commission of a crime of the same nature, not too distant in time, may be admitted to show plan, scheme, motive and design." 412 Pa. at 199, 194 A.2d at 152. In *Commonwealth v. Gilmore,* 447 Pa. 21, 288 A.2d 757 (1972), two men, one armed with a knife or razor, had, on four separate occasions within a sixteen day period, attacked and robbed individuals on the same stairwell of a bus terminal. The court held that evidence of the first three attacks had been properly admitted at the appellant's trial for the fourth incident, in order to show "plan and design." In *Commonwealth v. Smith,* 443 Pa. 151, 277 A.2d 807 (1971), the appellant had been involved in three gas station robberies (the last one involving a gas station/motel), and had been convicted of felony murder in connection with the last one.

At trial for this offense, the trial court permitted testimony of victims of the first two robberies. The Supreme Court upheld the convictions, finding "a common design and *modus operandi* relative to all three happenings." Similar examples may be found in *Commonwealth v. Borschell,* 462 Pa. 605, 342 A.2d 97 (1975) and *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955).

The two offenses with which appellant in the case before us was charged were very similar in nature, and indicate a common plan or *modus operandi.* Appellant chose as his victims women with young children. Appellant got on the elevator with his intended victims, pushed a button for a floor higher than the floors selected by the other people on the elevator, waited until the victims and children were alone with him, then stopped the elevator by use of the stop button or by holding the door open with his leg. Appellant robbed his victims by using force and threat of harm to the victims and their children, searched the victims' bras for money, then made his escape by running through the breezeway into the adjoining building. The robberies were committed in the same apartment complex, in the early evening, only five days apart. The crimes involved in this case were clearly at least as similar as the crimes in the cases previously cited herein. Evidence of either robbery would have been admissible at a trial for the other.

One additional case, *Commonwealth v. Lehman,* 166 Pa. Super. 181, 70 A.2d 404 (1950), is even more on point. In *Lehman,* a defendant's motion for severance of indictments charging separate and distinct offenses had been denied by the lower court. On appeal, our court found no abuse of discretion in consolidating the offenses:

"The indictments in these cases were closely related in that they charged similar offenses, committed within a month of each other within the same general area of Montgomery County. The propriety of the consolidation was demonstrated by the evidence at the trial. Although there were two distinct burglaries and robberies, in combination, yet the methods used were similar in all material respects. . . ." 166 Pa.Super. at 182, 70 A.2d at 405.

The court went on to review the similarities of the two crimes, concluding that the defendant had not been prejudiced by the consolidation. The robberies in the case before us were as similar to each other as the crimes which were consolidated for trial in *Lehman*.

Appellant's assignments of error in the case before us are without merit. The judgments of sentence should be affirmed.

JACOBS, President Judge, and PRICE, J., join in this Opinion.

## OPINION IN SUPPORT OF REVERSAL

SPAETH, Judge:

Appellant was charged with two robberies. The charges were tried together. The issue is whether they should have been.

### -1-

On January 2, 1975, at about 6:30 p. m., Geraldine Seawright and her two small children arrived at the apartment building where they lived. Outside the door they saw a man, whom they did not know but who addressed them in a friendly manner and followed them in. After waiting a long time for an elevator, Mrs. Seawright, her children, the man who had been outside and a second man walked to the adjoining apartment building to take an elevator there, since all floors of the two buildings were connected by breezeways. The second man got out at the third floor. Somewhere around the eighth floor the man who had been outside pushed the emergency stop button and announced a hold-up. Rejecting Mrs. Seawright's purse, he pushed and punched her several times, knocking her to the floor, where he held her down with his feet and searched inside her brassiere for money. Finding none at first, he threatened to kill the children and grabbed Mrs. Seawright's daughter. During this time he kept one hand in his pocket as if concealing a weapon. Finally he found a small purse with

$95 in it inside Mrs. Seawright's brassiere. Meanwhile, the elevator had gone to the tenth floor because Mrs. Seawright, in her struggles, had managed to deactivate the emergency stop button. The man got off there, taking the purse of money. Mrs. Seawright reported the robbery to Craig Scott, a housing police officer. City police were called, and she gave them a description of the robber.

On January 7, 1975,—five days later—sometime before 7 p. m., Mrs. Carrie Rodgers and her young son were waiting in the same building for an elevator. Two other women were also waiting for the elevator, and two men were talking nearby. When the elevator arrived, Mrs. Rodgers, her son, the two women, and one of the men boarded. The two women got off at lower floors, and the elevator proceeded to the ninth floor, where it stopped, although Mrs. Rodgers did not see what made it stop. The man held the door open with his knee and announced a hold-up. He took cash and food stamps from Mrs. Rodgers, searched inside her brassiere but found nothing, took her leather coat, and left the elevator. Mrs. Rodgers reported the robbery to a housing police officer, and her description of the robber was recorded.

On the basis of Mrs. Seawright's description of the man who had robbed her, Craig Scott, the housing police officer, decided that he wanted to talk to someone named "Boonie." On January 10, 1975, he encountered appellant, who he thought was "Boonie," on the street. Scott asked appellant to accompany him to talk to Mrs. Seawright about a robbery, and appellant agreed. On the way, the two stopped at a supermarket where Scott's wife had gone. As it happened, Scott's wife had met Mrs. Rodgers at the market, and as appellant and Scott approached, Mrs. Rodgers immediately identified appellant as the man who had robbed her. Appellant was arrested, and a line-up followed, at which Mrs. Seawright also identified appellant as the man who had robbed her.

-2-

The principles to be applied in deciding whether it was proper to try appellant for these two robberies at one trial have been stated in *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973).[1] There it is noted that where a defendant is tried at one trial for separate offenses, several risks are incurred: (1) the defendant may be embarrassed or confounded in his defense, for his defense to one charge may differ from and be inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence to find guilt where it would not have if the evidence of each offense had been considered separately. The attempt to recognize these risks and at the same time to admit all relevant evidence has led to the following general rule:

It is black letter law that evidence of one crime is inadmissible against a defendant being tried for another crime because the fact of the commission of one offense is not proof of the commission of another. See *Commonwealth v. Foose*, 441 Pa. 173, 272 A.2d 452 (1971). However, there sometimes exist special circumstances which operate as exceptions to the general rule and bring the case within the equally well established principle that evidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. See *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). When

---

1. The statement is by a plurality of the Court, but it is clear from the concurring and dissenting opinions that all the Justices agreed in it.

the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value.

*Id.,* 453 Pa. at 197–98, 307 A.2d at 269 (footnote omitted). *And see Commonwealth v. Irons,* 230 Pa.Super. 56, 326 A.2d 488 (1974) (consolidation for trial held proper where second crime represented effort to conceal first crime; although this is not one of five situations enumerated in *Peterson,* that enumeration is to be regarded as "illustrative and not exclusive," *id.,* 230 Pa.Super. at 63, 326 A.2d at 492).

-3-

The Commonwealth argues that the present case fits within the fifth situation enumerated in *Commonwealth v. Peterson, supra,* in that the two robberies show a common *modus operandi,* which tends to prove that both offenses were committed by the same person.

In discussing whether evidence will be sufficient to show *modus operandi,* Professor McCormick says this:

> Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.

*McCormick on Evidence* § 190 at 449 (Cleary Ed. 1972).

Our Supreme Court applied this principle in *Commonwealth v. Peterson, supra.* There, while the Court divided on other points, six of the seven Justices were agreed that the evidence was insufficient to show a *modus operandi.*[2]

2. The division in the Court is discussed in detail in *Commonwealth v. Irons, supra.* Briefly, it was this: Both the plurality (three justices) and the dissent (three justices) agreed that no *modus operandi* appeared. Despite finding no *modus operandi,* the plurality upheld consolidation because no confusion would result; Justice POMEROY concurred in this result, but by reasoning that, while it rejected the plurality's reasoning, did not require him to consider *modus operandi*; the dissent argued that the mere fact that no confusion would result did not justify consolidation. As regards the present case, such a decision is a binding precedent as to the meaning of *modus operandi*; as to anything else, it is not a precedent. In re: *District Attorney's Investigation of the Police Shooting of Jose Reyes,* 476 Pa. 59 at 70, 381 A.2d 865 at 871 (1977).

The facts were as follows. Two robberies occurred on the same day, the first in the morning, in one market, the second in the evening, in another market. One robbery was by two men who asked for the manager, ostensibly to purchase money orders. When they got to the manager's office, one of them drew a pistol. The other robbery was by four men who asked to cash checks, one of them then pulling out a sawed-off shotgun. In each robbery, a car of the same description was used as the get-away car; witnesses of the two robberies remembered digits from the license plate, which coincided, and identified the same persons as the robbers. This evidence was held insufficient to show a *modus operandi* :

> Nor do the facts surrounding these crimes show that there is a reasonable probability the same person committed both offenses due to a concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed.
>
> Armed robbery is often a fungible commodity and there is very little evidence overlap instantly.

453 Pa. at 198, note 7, 307 A.2d at 270, note 7.

Here, too, "there is very little evidence overlap." To be sure, in some respects the two robberies were similar. Both took place at the same apartment complex, at about the same hour of the day. Both robbers boarded the elevator at the first floor. Both victims were women with young children. Each robber searched his victim's brassiere for hidden money. These similarities, however, cannot be said to represent such "a concurrence of unusual and distinctive facts," *Commonwealth v. Peterson, supra,* "as to be like a signature," *McCormick, supra.*

In the first place in significant respects the two robberies were dissimilar. One robber beat and threatened his victims, the other did not. One robber stole clothing, the other did not. One robber stopped the elevator between floors by pushing the emergency stop button, the other stopped it at a floor and apparently did not use the emergency button. One robber either had a weapon or feigned one, the other

did not. In the second place, the similarities that did exist between the two robberies were just the sort of similarities as led to the comment in *Commonwealth v. Peterson, supra,* that "[a]rmed robbery is often a fungible commodity . .." Thus, if one thinks of robberies in an apartment complex, one will ask, what sort of victim would one expect any such robber to choose—women and children, or men of his own strength? Where would one expect such a robber to board the elevator—at the bottom, where he could wait until a suitable victim boarded, or on another floor, where he would have no control over who might board? In other words there was nothing so distinctive about the two robberies here "as to be like a signature", *McCormick, supra,* and thereby "show that there is a reasonable probability the same person committed both offenses", *Commonwealth v. Peterson, supra.*

-4-

The Commonwealth also argues, however, that the present case fits within the fourth situation enumerated in *Commonwealth v. Peterson, supra,* in that the two robberies were part of "a common scheme, plan or design."

> [S]ometimes . . . evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. *Commonwealth v. Fortune,* 464 Pa. 367, 373, 346 A.2d 783, 786 (1975) (emphasis in original).

The simplest example of a "common scheme" is found in *Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975). There, the defendant robbed a bar, and with police in pursuit, entered an apartment, forced the occupants to go with him to another apartment, and committed felonies

wholesale, including murder, rape, and shootings. The Court found that the incidents surrounding the murder were "one of a sequence of acts . . . part of the history of the event on trial." 462 Pa. at 591, 342 A.2d at 90. *See Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1973) (no such common scheme found). Here, the two robberies were separated by five days, and cannot be said to represent "part of the history of the event on trial."

There is a second sort of "common scheme", not so simple. The crimes that manifest this sort of common scheme are not cumulative or sequential in the sense that one provides the immediate cause or motivation of the next, as in *Commonwealth v. Brown, supra,* but they are such as permit one to infer a continuing scheme or an underlying conspiracy. *See generally McCormick, supra,* at 448–49 and note 35 (collecting cases). The cases, however, are still in dispute regarding when such an inference is proper.

In *Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1973), the defendant and others robbed one Jacob Blank at a railroad station, and then, about two hours later, returned to the station, robbed a second man and threw him from the platform to the tracks; a co-defendant then did the same to a third, who died as a result. The Court held Blank's testimony admissible at the defendant's trial for murder of the third man because there was "a common scheme, plan or design and . . . [the defendant] had participated in the conspiracy from the beginning." 454 Pa. at 408, 311 A.2d at 579 (1973). In *Commonwealth v. Lasch,* 464 Pa. 573, 347 A.2d 690 (1975), three Justices found a common scheme where the defendant was charged with numerous burglaries in the same area and had loot from each of them. Two other Justices, however, found no common scheme because the burglaries were not linked in any particular way; these Justices would have required a link similar to a *modus operandi.* (Justice NIX simply noted his dissent.) In *Commonwealth v. Fortune, supra,* a witness testified that he and the defendant had committed six other robberies within a one block radius. The Commonwealth asserted a common scheme—robbing little boys—but the Court held that there

were too many facts at variance to establish a common scheme, for example, the victim of the crime on trial (murder) was not a little boy, and there was no identity of weapons.

These cases leave unresolved the question of how interconnected the series of crimes must be before a common scheme may be inferred (a "conspiracy" connection crucial in *Commonwealth v. Banks, supra* ; something akin to *modus operandi* required in *Commonwealth v. Fortune, supra* ; a divided court in *Commonwealth v. Lasch, supra* ). However, in examining the various formulations, it is crucial to take into account the *purpose* for which the common scheme is introduced.

The important distinction is between those cases (like the case at hand) in which the identity of the defendant is at issue, and those cases in which identity is not at issue.

In the first sort of common scheme, where the various crimes together comprise "the history of the event on trial," identity is not at issue. Only one criminal episode is involved; indeed in the absence of a motion for separation, the crimes would *have* to be joined for trial under *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated and remanded,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand,* 455 Pa. 622, 314 A.2d 854 (1974).

Similarly, in other cases in which the prior crime is not part of the same criminal episode, evidence of the prior crime may be used to prove other things than identity. In *Commonwealth v. Banks, supra,* it appears that evidence of the prior crime—the earlier train station robbery—helped to establish the defendant's participation in an on-going conspiracy and thus his complicity in the felony-murder by his co-defendant. In *Commonwealth v. Raymond,* 412 Pa. 194, 194 A.2d 150 (1963), *cert. denied,* 377 U.S. 999, 84 S.Ct. 1930, 12 L.Ed.2d 1049 (1964), cited by the affirming opinion, the defendant admitted shooting a policeman but argued self-defense; evidence of a similar incident a week before was properly introduced to prove that such a claim was unlikely. In *Commonwealth v. Smith,* 443 Pa. 151, 277 A.2d 807 (1971), also cited by the affirming opinion, the defendant admitted

killing the victim but argued that the shooting was an accident; evidence of similar robberies, with co-defendants testifying as to the defendant's participation in them, was properly introduced to show absence of accident. Again, identification was not at issue.

Where identification *is* at issue, the common scheme essentially fulfills the function of a *modus operandi,* despite the different name. The theory is: because we know that the defendant committed crime A, and because crimes A and B are so distinctive, it is safe to assume (the jury may find) that the defendant must be the perpetrator of crime B. The validity of this reasoning, it will be observed, thus depends on two factors: (1) the solidity of the link between the defendant and one of the crimes, either by proof of a prior conviction for one of the crimes, or by other clear evidence; [3] and (2) the distinctiveness of the crimes.

At least one case suggests that when evidence suggesting a common scheme is offered to prove identity, the court will be more reluctant to find such a common scheme than it will be when the evidence is offered to prove absence of mistake, self-defense or the like. Thus, in *Commonwealth v. Fortune, supra,* the Supreme Court refused to find a common scheme where identity was at issue; the prior crimes involved different sorts of victims and different weapons. *See also, Commonwealth v. Lasch, supra* 464 Pa. at 592 and 594, 347 A.2d at 699, 701 (opinions in support of affirmance). However, it would seem that if the defendant in *Fortune* had pleaded self-defense, it would have been proper to have introduced evidence of the prior crimes to show that the defendant was more likely the aggressor. *See, Commonwealth v. Raymond, supra.*

In two cases cited by the affirming opinion, *Commonwealth v. Gilmore,* 447 Pa. 21, 288 A.2d 757 (1972), and *Commonwealth v. Lehman,* 166 Pa.Super. 181, 70 A.2d 404 (1950), a common scheme proving identity was found, but the crimes were much more distinctive than the two crimes involved here. In *Gilmore,* the fact that all four robberies

---

**3.** This link was provided in this case by the unequivocal identifications of appellant by the victims.

occurred in the same subway stairwell within 16 days, with the use of knives or razors, and the fact that the victims independently concurred in a description of the robbers as a distinctive and unusual pair, made it safe to conclude that the robberies were perpetrated by the same persons. In *Lehman,* the burglars at two different houses carried out the crimes in a similar way: all wore gloves and hats pulled down over eyes; they cut the wires to each house; bound the family members in the same fashion; and "[m]ilk found in both houses was consumed on the premises". 166 Pa.Super. at 183, 70 A.2d at 405.

-5-

Finally, we note that the consolidation of two offenses for trial, like the admission at trial of evidence of prior crimes, is subject to the court's discretion even where an exception to the general rule would permit consolidation. In the end, the prejudice to the defendant should be balanced against the usefulness to the prosecution. *See McCormick, supra,* § 190, pp. 452–454:

> Most of the opinions . . . proceed on the assumption that the decision turns solely upon the ascertainment and application of a rule. If the situation fits one of the classes wherein the evidence has been recognized as having independent relevancy, then the evidence is received, otherwise not. This mechanical way of handling these questions has the advantage of calling on the judge for a minimum of personal judgment. But problems of lessening the dangers of prejudice without too much sacrifice of relevant evidence can seldom if ever be satisfactorily solved by mechanical rules . . ..
>
> Accordingly, some of the wiser opinions (especially recent ones) recognize that the problem is not merely one of pigeonholing, but one of balancing . . ..
>
> *Id.* at 453 (footnote omitted).

The Court in *Commonwealth v. Peterson, supra,* recognized the necessity of this ultimate balancing process:

> When the evidence is relevant *and important* to one of these five [exceptions], it is generally conceded that the

prejudicial effect *may be outweighed* by the probative value.

453 Pa. at 198, 307 A.2d at 269 (emphasis supplied; footnote omitted).

Here, the two victims independently identified appellant immediately and with certainty. Consolidation of the two offenses was improper because even if, despite the authorities that have been discussed, we were to find that evidence of each crime had probative value in the prosecution of the other, still that probative value was not so relevant and important to the prosecution of these cases as to outweigh the prejudice to appellant.[4]

The judgments of sentence should be vacated, and the record remanded for separate trials.

HOFFMAN and CERCONE, JJ., join in this opinion.

4. Appellant has argued that the trial judge incorrectly denied appellant's request for a hearing on the existence of a housing police report about the Rodgers robbery. Appellant's counsel, it appears, did not know before trial that such a report may have existed, and asked for the hearing when the issue came up at trial. We do not consider the correctness of the trial judge's action, for since we remand for a new trial, we assume that whether counsel is entitled to the report—if it exists—will be decided upon appropriate pre-trial motion.