434 A.2d 1294

**COMMONWEALTH of Pennsylvania,**

**v.**

**Mack KING, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Sept. 18, 1981.

564

Margaret M. Boyce, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, STRANAHAN [1] and SUGERMAN [2], JJ.

STRANAHAN, Judge:

Appellant was charged with rape at No. 2037 August 1977, involuntary deviate sexual intercourse at No. 2035 August 1977, and indecent assault at No. 2033 August 1977. The above charges arose from the August 10, 1977 sexual assault of Ms. Marion Clayton.

At No. 75 September 1977, appellant was charged with attempted rape. At No. 77 September 1977 he was charged with indecent exposure. The latter two charges are the result of the July 23, 1977 sexual assault of Cheryl St. Cyr.

On November 21, 1977, the trial court heard evidence on appellant's motions to suppress physical evidence and sever all of the above listed charges. The motions were denied and all of the charges involving both victims were consolidated for trial.

Appellant was convicted of all counts involving both victims after a trial by jury. Post-trial motions were timely filed and denied by the trial court. On March 28, 1978, appellant was sentenced to eight to twenty years incarceration for the offense involving Ms. Clayton. He received a concurrent sentence of one to two years incarceration for the offenses involving Ms. St. Cyr.

The appeal followed.

Appellant contends that the trial court improperly consolidated the cases involving Ms. Clayton and Ms. St. Cyr for trial, that his convictions were not based upon sufficient evidence, and that trial counsel was ineffective in failing to object to an alleged misstatement of fact in the prosecutor's closing argument.

Appellant's contentions are without merit and the judgment of sentence is affirmed.

1. Judge John Q. Stranahan, P. J., of the Court of Common Pleas of Mercer County, Pennsylvania, is sitting by designation.

2. Judge Leonard Sugerman, of the Court of Common Pleas of Chester County, Pennsylvania, is sitting by designation.

SUFFICIENCY OF THE EVIDENCE:

Appellant maintains that the evidence was insufficient to support his conviction for rape, involuntary deviate sexual intercourse, and indecent assault with Marion Clayton as victim.

He further contends that the evidence was insufficient to support his convictions for attempted rape and indecent exposure with Cheryl St. Cyr as victim.

Each case will be considered in turn.

The test for reviewing sufficiency of the evidence is delineated in *Commonwealth v. Madison*, 263 Pa.Super. 206, 209, 210, 397 A.2d 818, 820 (1979) as follows:

> In testing the sufficiency of the evidence, we proceed in several steps. First, we accept as true all the evidence upon which the finder of fact could properly have reached its verdict. Next, we give the Commonwealth the benefit of all reasonable references arising from that evidence. And finally, we ask whether the evidence, and the references arising from it, are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. (Citations omitted)

A.   Marion Clayton cases:

The evidence involving Marion Clayton as victim, viewed in light of the above standard, reveals that the victim, a nineteen year old woman, saw the following advertisement in the *Reader*, a local Philadelphia area newspaper, in June 1977.

> Attention, get paid for your photographs from $15 to $300. No experience necessary, will train free. Children ages 1–16 must be accompanied by a parent. Adults 17 and over photographs will be taken by MBX professional photographer. Credit terms arranged. Call now. Staff operators on duty seven days 24 hours. MO4–3941, BA8–0377. MBX of Pennsylvania.

Ms. Clayton called the listed numbers twice and gave the answering service information concerning her age, height, weight, address, and telephone number.

On August 10, 1977 at 5:30 p. m. the victim was telephoned by a man identifying himself as Mack King. The man questioned Ms. Clayton about the information provided the answering service, asked if she was interested in photography, and suggested that they meet. Ms. Clayton suggested meeting the next day, but agreed to the caller's request that the meeting occur that evening. She agreed to meet the caller in front of a restaurant at 8:00 p. m. The caller described the clothing he would be wearing.

The victim went to the appointed place and waited fifteen minutes before being approached by the defendant, Mack King. The defendant was wearing the clothing described by the telephone caller. He showed Ms. Clayton an MBX business identification card bearing his photograph and suggested that the meeting continue in a nearby bar.

In the bar, they discussed appellant's business and Ms. Clayton's career prospects. Appellant displayed photographs of other young women and business papers carried in a briefcase marked with the initial MBX. Appellant told Ms. Clayton that she would, as a pre-requisite to her modeling career, have to enroll in his photography school at a cost of sixty dollars, with a five dollar deposit required. The prosecutrix completed an application and promised to pay the deposit the next day. In the bar, the victim consumed one glass of wine.

The appellant and the victim left the bar between 9:30 and 10:00 p. m. The appellant told the victim he wanted her to meet one of the women with whom she would be working. Ms. Clayton acquiesced and Mr. King led her to an apartment building located near the bar. He led the victim into the building through a side door leading to a staircase. They proceeded to a second floor landing.

Upon arriving at the landing, Mr. King ordered Ms. Clayton to stop and take off her jacket. She initially refused, but acceded when the demand was repeated and appellant

approached. Appellant then attempted to unzip Ms. Clayton's pants. She resisted, pushing him away. Appellant ordered her to unzip the pants. Ms. Clayton initially refused, but complied when appellant, stating that he was a karate expert, threatened to hurt her. After another threat from appellant, the victim pulled down her pants and lay on her back. Appellant raped Ms. Clayton, who unsuccessfully tried to push him away. He then ordered the victim to turn over and engaged in anal intercourse. Then, appellant ordered Ms. Clayton to engage in oral-genital intercourse. When she refused, appellant grabbed her head and forced her to do so. The victim then vomited during the oral intercourse. Appellant finally ordered Ms. Clayton to rub his stomach and genitalia until he ejaculated.

The prosecutrix was directed to dress and did so. Appellant grabbed and rummaged through her purse. The victim left the building and appellant approached her on the street, returned the purse, and told her to tear up her application to MBX and asked what she intended to do.

Ms. Clayton went to the home of her boyfriend, where she was joined by her mother. She was taken first to Temple University Hospital, then to Presbyterian Hospital, where she was examined and treated. The victim then went to the police administration building, where she reported the incident, describing her assailant. She returned to the site of the assaults with an officer.

The records custodian of Presbyterian Hospital testified that Ms. Clayton was in fact examined at that institution. A pelvic examination was "negative and normal." She was not bruised. Counsel later stipulated that the police laboratory report indicated that no evidence of sperm was found during either the vaginal or rectal examinations of the victim.

Appellant contends that the evidence presented at trial is as consistent with his explanation that the victim consented to the sexual relations as it is with the victim's allegation that she was raped. He points to the absence of physical injury and the victim's conduct in spending time with him in

a bar and accompanying him to the apartment building as indicia of consent.

These claims were meritless. The evidence was clearly sufficient to support the jury's verdict.

The offense of rape is defined as follows:

Section 3121. Rape

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion,

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution; . . .

35 Pa. C.S. 3121.

In *Commonwealth v. Irvin*, 260 Pa.Super. 122, 393 A.2d 1042 (1978), this court stated that the degree of force involved in rape or involuntary deviate sexual intercourse is defined in terms of its effect on the volition of the victim rather than infliction of physical injury. The degree of force needed to support a conviction for rape or involuntary deviate sexual intercourse "need only be such as to establish lack of consent." *Cf. Commonwealth v. Rough*, 275 Pa. Super. 50, 418 A.2d 605 (1980) panel decision and citations contained therein.

■ In this case, the victim pushed the appellant away when he attempted to unzip her pants. When the appellant demanded that the victim unzip her pants, she refused to do so until the appellant told her that he was a karate expert and that he would hurt her if she did not obey him. When the appellant demanded that the victim remove her pants, she refused to do so until he again threatened her. Clearly the "victim succumbed to the threat of forcible compulsion." The Court finds, therefore, that there was sufficient evidence to convict the appellant of rape.

The offense of involuntary deviate sexual intercourse is defined as follows:

Section 3123. Involuntary deviate sexual intercourse.

A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution; . . .

18 Pa. C.S. 3123.

"Deviate sexual intercourse" is defined as "sexual intercourse per os or per anus between human beings who are not husband and wife." 18 Pa. C.S. 3101.

■ In the case at hand, the victim engaged in oral intercourse only after the above described threats. Moreover, the oral intercourse was accomplished by the appellant grabbing the victim's head and forcing the contact. Hence, there was more than sufficient evidence to convict the appellant of involuntary deviate sexual intercourse.

The offense of indecent assault is defined as follows: Section 3126. Indecent assault.

A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty of indecent assault, . . . , if:

(1) he does so without the consent of the other person;

. . .

18 Pa. C.S. 3126.

"Indecent contact" is defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa. C.S. 3101.

■ In light of the evidence produced at trial, there is no question that there was sufficient evidence to convict the appellant of indecent assault.

### B. CHERYL ST. CYR CASE:

The testimony of Cheryl St. Cyr, viewed in light of the standard of review enunciated above, reveals that the victim, age 17, learned of MBX from a friend who had seen the

newspaper advertisement. Ms. St. Cyr completed the MBX application and paid a sixty dollar fee. At the conclusion of the six month course, she was to receive a portfolio and diploma. She attended several classes and posed for sketches drawn by appellant.

Ms. St. Cyr testified that on July 16, 1977, at a posing session, appellant attempted to kiss her. She rebuffed his advance, but continued her session, agreeing to a posing session in her home the next week.

On July 23, 1977, appellant met Ms. St. Cyr at her home. After completing some clerical work, appellant suggested a posing session. The victim donned a "sizzler", a short dress without pants, and the session began. Appellant went into the bathroom at one point during the session. In his absence, the victim did warm up poses. She then noticed the appellant standing in the bathroom doorway and, with his penis exposed, masturbating. Ms. St. Cyr advised appellant that she was not interested in sexual activity and that her fiancé was scheduled to arrive. Appellant, in turn, intimated that she in fact desired such activity. Appellant then approached the victim and tried to force himself on top of her. She resisted, pushing him away by kneeing him in the chest. When this occurred, appellant's zipper was open, but the complainant was uncertain as to whether his penis was exposed. She began crying after pushing appellant away. The timely arrival of the victim's fiancé brought the incident to a close and appellant was directed to leave.

After appellant's arrest for the offenses involving Ms. Clayton, Ms. St. Cyr was contacted by the police, who had obtained her name after reviewing material seized from appellant when he was arrested. She then reported the incident.

Appellant contends that his convictions of attempted rape and indecent exposure are not supported by sufficient evidence. He advances three bases for this contention.

First, appellant argues that Ms. St. Cyr's testimony is not worthy of belief. He points to an alleged inconsistency

between her trial and preliminary hearing testimonies regarding the date on which appellant exposed himself. This claim properly goes to the weight of the evidence, rather than its sufficiency. Assuming arguendo that such an inconsistency did exist, it is the function of the trier of fact to weigh and evaluate witnesses credibility. The jury chose to accept Ms. St. Cyr's testimony as credible, which was its prerogative. Absent evidence that the jury's decision was manifestly erroneous, it will not be disturbed on appellate review. *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972). There is no such evidence in this case.

■ Appellant next maintains that the victim's uncertainty about whether or not appellant's penis was exposed precludes a finding that he took a substantial step toward the completion of rape. Criminal attempt is defined in part as follows:

Section 901   Criminal Attempt

(a) Definition of attempt—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa. C.S. 901.

Appellant's conduct falls within the gambit of the criminal attempt statute. The Commonwealth's evidence indicates that appellant exposed himself, indicated a desire to have sexual intercourse despite the victim's remonstrances, approached the victim and forcibly laid down on top of her. He was forced away by the victim's resistance. Clearly, appellant did an act constituting a substantial step towards completion of the crime.

■ Appellant finally contends that the testimony of Ms. St. Cyr in regard to the charge of Indecent Exposure was insufficient to sustain the verdict. Indecent exposure is defined as follows:

Section 3127   Indecent Exposure

A person commits a misdemeanor of the second degree if, for the purpose of arousing or gratifying sexual desire

of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm. 18 Pa. C.S. 3127.

Appellant argues that Ms. St. Cyr's failure to testify that she was "affronted or alarmed" by his conduct was a flaw fatal to the Commonwealth's case. We disagree. The evidence indicates that appellant excused himself from the posing session. When he reappeared, his penis was exposed and he was masturbating. Ms. St. Cyr's response, telling appellant to stop is an indiction that his activity caused affront or alarm. Additionally, the statute requires only that the defendant "knows his conduct is likely to cause affront or alarm." It can be inferred from the surrounding circumstances that appellant knew his conduct was likely to cause affront or alarm. *Commonwealth v. Back*, 255 Pa.Super. 603, 389 A.2d 141 (1978).

CONSOLIDATION:

Appellant contends that the trial court erred in ordering consolidation of the Clayton and St. Cyr cases for trial.

In *Commonwealth v. Fiorini*, 257 Pa.Super. 185, 189, 390 A.2d 774, 776 (1978), this court stated:

It is well established that decisions with regard to consolidation or severance of indictments from trial are matters of discretion with the trial judge, whose conclusion will be reversed only for a manifest abuse of discretion or prejudice and injustice to the defendant. Citing *Commonwealth v. Loch*, 239 Pa.Super. 331, 334, 361 A.2d 758, 759 (1976).

This Court has consistently interpreted "abuse of discretion" in light of the Supreme Court's decision in *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973) by holding that no abuse of discretion occurs if the offenses to be consolidated are easily separable in the minds of the jurors, and if evidence of one offense would have been independently admissible at a separate trial of the other offense. *Commonwealth v. Rhodes*, 250 Pa.Super. 210, 378

A.2d 901 (1977). *Commonwealth v. Morris*, 258 Pa.Super. 24, 391 A.2d 653 (1978).

■ In the case at bar, both standards were met and the trial court did not abuse its discretion in consolidating the Clayton and St. Cyr cases for trial.

First, as the opinion of the trial court notes, the evidence of the Clayton and St. Cyr cases was not complex. The testimony was relatively brief with the bulk of the evidence against appellant coming from the two victims. The demeanor of the victims was dissimilar, providing the jury with a ready means of distinguishing their testimony. Appellant's only assertion that the jury may have been confused arises from the Commonwealth having submitted hospital records regarding Ms. Clayton at the conclusion of its case, rather than at the conclusion of her testimony. The records, however, dealt only with Ms. Clayton and the prosecution explained the reason for their late introduction to the jury.

In summary, evidence of the Clayton and St. Cyr offenses was easily separable. Hence, the first standard governing consolidation met in this case.

This leads then to examination of the second prong of the test: the evidence of each crime must be independently admissible in the trial of the other if the crimes were tried separately.

Generally, evidence of other crimes allegedly committed by a defendant is not admissible at trial. As the court stated in *Commonwealth v. Bradley*, 243 Pa.Super. 208, 212, 364 A.2d 944, 945, 946 (1976):

One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an

emotional reaction on their part against the defendant. *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955).

Special circumstances constituting exceptions to the general rule have been found to exist when the evidence of other crimes "tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Peterson*, 453 Pa. 187, 197, 198, 307 A.2d 264, 269 (1973). Cited in *Commonwealth v. Hude*, 256 Pa.Super. 439, 442, 443, 390 A.2d 183, 184, 185 (1978).

If one of the above listed special circumstances is found to exist, the trial court must then balance ". . . on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of their other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility." McCormick on Evidence, sec. 190 at 453 (2nd Ed. 1972), cited in *Commonwealth v. Hude*, supra, 256 Pa.Super. at 445 and 390 A.2d at 186.

In the case at bar, the Clayton and St. Cyr sexual assaults form part of a common scheme, plan, or design so distinctive that proof of one tends to prove the other. In each offense, MBX of Pennsylvania was the device used by appellant to contact and isolate his victim. MBX had no office or studio. All classes and sessions were held in the home of the student. The advertisement which brought both Ms. Clayton and Ms. St. Cyr into contact with appellant was directed at, among others, young women. Both Ms. St. Cyr and Ms.

Clayton became aware of MBX through the advertisement. Both completed applications, and paid or arranged to pay a tuition fee. Appellant made sexual advances to Ms. St. Cyr at the first lesson held in her home. The sexual assault of Ms. St. Cyr occurred eight days later at a second session, held in the victim's home when the victim was alone with appellant. Less than three weeks later, Ms. Clayton, immediately after "enrolling" in MBX was assaulted by the appellant. Appellant lured Ms. Clayton to an isolated location, on the pretext of visiting the residence of another MBX model and so was able to complete the attack in privacy. In sum, both the Clayton and St. Cyr cases are promoted by MBX, which was used by appellant as the means of contacting, isolating and attacking the two victims. The attacks thus constituted a common scheme to use MBX as a vehicle for appellant to gain access to young women for the purpose of sexual gratification. See *Commonwealth v. Morris*, 258 Pa.Super. 24, 391 A.2d 653 (1978). Affirmed by an equally divided court.

Additionally, the appellant's identical use of MBX in both cases tends to prove both intent and absence of mistake or accident. Evidence of each of these two offenses, therefore, would be admissible at the trial of the other if the offenses were tried separately. *Commonwealth v. Peterson*, supra.

The appellant alleges that he was unduly prejudiced by the consolidation. We disagree. In this case, the probative value of the "other crimes" evidence outweighs any potential prejudice suffered by appellant.

The lower court properly consolidated the Clayton and St. Cyr cases for trial.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant now contends that his trial counsel was ineffective, mandating an award of a new trial.

The alleged ineffectiveness arises from the closing arguments of both defense counsel and the prosecutor. Appellant's counsel appears to have argued that Ms. Clayton developed her testimony regarding appellant's failure to

ejaculate inside her to conform with a laboratory report which showed no evidence of spermatozoa inside the victim. The prosecutor then argued that the police lab report, not the hospital medical report, contained the evidence in question and that Ms. Clayton was unaware of the contents of the police lab report and, hence, she could not have so tailored her testimony. Appellant argues that the prosecutor referred to facts not contained in the record by stating that tests for spermatozoa were not conducted at the hospital and that Ms. Clayton was unaware of the results of said tests.

The record clearly indicates that the police laboratory rather than the hospital conducted the tests for spermatozoa. While less clearly, the record also appears to indicate that Ms. Clayton was unaware of the results of the spermatozoa testing.

Counsel was, therefore, not ineffective for failure to pursue a frivolous issue. *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

This Court, therefore, affirms the judgment of sentence imposed against the appellant by the lower court.