## UNITED STATES v. LOTSCH.*
### No. 63.

Circuit Court of Appeals, Second Circuit.
Feb. 27, 1939.

Warren I. Lee, of New York City (Samuel L. Miller and Warren I. Lee, both of New York City, Arthur L. Burchell, of Brooklyn, N. Y., of counsel) for appellant.

Vine H. Smith, U. S. Atty., of Brooklyn, N. Y. (Frank J. Parker, of Brooklyn, N. Y., of counsel), for the United States.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal comes up from a judgment of conviction upon three counts of an indictment for receiving commissions from borrowers from a national bank of which the accused was an officer (section 595, Title 12, U.S.Code, 12 U.S.C.A. § 595). The first count (the second in the indictment) alleged that on June 21, 1935, Lotsch, the accused, who was chairman of the bank's board of directors, received a commission of $2,500 from the borrower, "Aqua Systems Inc.", for a loan to that company of $25,000. The second count (the fifth in the indictment) was for receiving a commission of $650 for a loan of $6,500 to the Bushwick Cornice Works, on April 1, 1935; the third count (the sixth of the indictment) was for receiving $2,000 for a loan of $20,000 to the Plack Construction Company, on December 9, 1936. The evidence on the first count was that one, Kaestner, secretary and treasurer of the borrower, met Lotsch at an attorney's office in Manhattan, and that Lotsch agreed to procure for him a loan of $25,000, on condition that Lotsch should receive $2,500. The money was lent at a later interview, when three officers of the company were present—Kaestner, Peter and Beckwith. Kaestner and Peter each drew a cheque for $500 to his own order, which he endorsed and delivered to Lotsch: Beckwith drew, endorsed and delivered a similar cheque for $1,500. These three cheques were later returned by the bank to the borrower as paid vouchers. The second count was of substantially the same kind, except that one officer of the borrower drew a single cheque. The third

count concerned a loan of $20,000, which the borrower's president, Plack, secured from Lotsch for a commission of $2,000. The payment in this case was in part by three cheques, aggregating $1,750, all drawn to the order of Plack, and endorsed by him and delivered to Lotsch in Brooklyn: to make up the balance Plack surrendered a personal note of Lotsch's for $2,500, on which $250 remained unpaid. The defense rests upon three points: first, that the counts were misjoined because they alleged three separate crimes: second, that there was not enough evidence to support the verdict: third, that the prosecutor misconducted himself in his address to the jury, and that the judge was partial and unfair to the accused during the trial.

█ There is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all. This possibility violates the doctrine that only direct evidence of the transaction charged will ordinarily be accepted, and that the accused is not to be convicted because of his criminal disposition. Yet in the ordinary affairs of life such a disposition is a convincing factor, and its exclusion is rather because the issue is practically unmanageable than because it is not rationally relevant. When the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury. Hence it was the rule at common-law—certainly as to misdemeanors—that separate crimes could be joined in the court's discretion (Bishop's New Crim. Proc. § 452); and section 557 of Title 18, U.S.Code, 18 U.S.C.A. § 557, has made that doctrine applicable to felonies as well. (Indeed, that was probably also true at common-law so long as felonies and misdemeanors were not mixed in one indictment). Under that section "two or more acts or transactions of the same class of crimes" may be joined, if that can "properly" be done; that is, if the defendant can be fairly tried on all the charges at once. That rests in the discretion of the trial judge. Pointer v. United States, 151 U.S. 396, 400–404, 14 S.Ct. 410, 38 L.Ed. 208;

Dolan v. United States, 8 Cir., 133 F. 440; Corbin v. United States, 5 Cir., 264 F. 659; Clifton v. United States, 54 App.D.C. 104, 295 F. 925 (semble). Here we can see no prejudice from joining the three charges: the evidence as to each was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each. The joinder was therefore proper, even assuming that the objection had not in any case been forfeited by failing to take it before the cause came to trial. Optner v. United States, 6 Cir., 13 F.2d 11; Dowling v. United States, 5 Cir., 49 F.2d 1014.

█ Coming then to the merits, the first two counts raise a question of law whose answer is not entirely plain. Lotsch got the cheques, endorsed in blank, in Manhattan, and cashed them in Brooklyn at his bank. The first argument is that the return of the cheques to the borrowers as paid vouchers was not evidence that he had cashed them: considering that he was himself chairman of the bank's board, we dismiss this as a frivolous objection. Next, it is argued that the crime was committed when Lotsch took the cheques— that is in Manhattan—and not when he cashed them in Brooklyn. That was indeed held in Commonwealth v. Donovan, 170 Mass. 228, 49 N.E. 104; but State v. Walls, 54 Ind. 561, is to the contrary, and so is United States v. Green, D.C., 136 F. 618. Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482, favors the Indiana rule, at least by implication, because, if the receipt of the cheque be the offence, that would have been a short answer to the prosecution, for Burton concededly got the cheque in Washington. In the case at bar the point was not raised until—at the earliest—the prosecution had rested its case; which has been held to be too late (Hagner v. United States, 60 App. D.C. 335, 54 F.2d 446); and in any event we need not decide it, because, if there was any evidence to sustain the conviction on the third count, that was enough, the same sentence being imposed upon each count concurrently.

█ The sufficiency of the evidence upon the third count is indeed challenged because of its improbability. We have already mentioned the note of $2,500 upon which Lotsch still owed $250 and which Plack returned to him to make up the commission of $2,000. When the Plack

company became bankrupt shortly thereafter, this note was found once more in its possession, and was sold at auction upon liquidation of its assets. The prosecution accounted for this by proving that the Plack company had lent Lotsch $2,500 a second time, and that he had used the old note again instead of making out a new one. This, the argument runs, was so fantastic a story as to taint the whole testimony of the witnesses to the transaction. In the first place the truth of that testimony was in any case for the jury; but, that aside, there was nothing fantastic about the explanation. If the Plack company did not mean to negotiate Lotsch's note—as it probably did not—but merely to have some evidence of the loan, we can see nothing incredible in their accepting the old note again. Certainly we ought not to say that a jury must not only disbelieve that part of the testimony, but discredit all of it.

 The last point is that in his address to the jury the prosecutor stepped beyond proper limits. Two instances are especially pressed. In the first he said that, since the United States guaranteed bank deposits, the money lent to these borrowers came out of the jurors' pockets. That was plainly an improper remark, and if a reversal would do no more than show our disapproval, we might reverse. Unhappily, it would accomplish little towards punishing the offender, and would upset the conviction of a plainly guilty man. No doubt such an impropriety may be grave enough to demand this extreme course: the Supreme Court found us too complaisant, for example, in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. It is hard to know where to draw the line; but the offence was far less flagrant here than in Berger's case, and it seems to us that a reversal would be an immoderate penalty. The other instance was where the prosecutor said that at times people said that only petty offenders were brought to trial, the rich ones escaping; but that in the case before the jurors, the accused was chairman of a board of directors. This somewhat fatuous comment does not seem to us to have been prejudicial to the accused. We can see no warrant whatever for impugning the judge's bearing during the trial.

Judgment affirmed.