470 A.2d 122

**COMMONWEALTH of Pennsylvania**

v.

**Robert Elwood LAURENSON, II, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 3, 1983.

Filed Dec. 16, 1983.

48

George Edward Lepley, Jr., Public Defender, Williamsport, for appellant.

Kevin H. Way, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before SPAETH, President Judge, HESTER and LIPEZ, JJ.

SPAETH, President Judge:

This is an appeal from judgments of sentence. Two informations were consolidated for trial, and on October 6 through 9, 1981, appellant was tried before a jury. In case No. 81–10,200 (McLaughlin case) appellant was found guilty of burglary, rape, involuntary deviate sexual intercourse, terroristic threats and simple assault. In case No. 81–10,-432 (Cooper case) appellant was found guilty of rape, burglary and terroristic threats. On December 21, 1981, appellant was sentenced to a total of 21 to 42 years imprisonment. We affirm.

Prior to trial the Commonwealth filed a motion to consolidate the Cooper and McLaughlin cases. Appellant then filed an omnibus pretrial motion, in which he moved to suppress his statement to the police; to suppress any in-court identification of him by Mrs. McLaughlin; to suppress certain real evidence seized by the police; for a change of venue or, in the alternative, a change of venire; and for individual voir dire. Following hearings on August 6, 10, and 24, 1981, the trial court by opinion and order dated September 23, 1981, granted the Commonwealth's motion to consolidate; denied appellant's motions to suppress; denied appellant's motion for a change of venue or venire; and granted appellant's motion for individual voir dire. On appeal, appellant argues that the trial court erred in granting the Commonwealth's motion to consolidate and in denying his several motions to suppress and his motion for a change of venue or venire. He also argues that his trial counsel was ineffective.

1

Appellant argues that the Cooper and McLaughlin cases were not sufficiently similar to warrant consolidation, and that he was unduly prejudiced by the consolidation.

 Whether to consolidate the informations was a decision within the discretion of the trial court, and the decision will not be reversed absent an abuse of discretion. *Commonwealth v. Morris*, 493 Pa. 164, 425 A.2d 715 (1981); *Commonwealth v. Larkins*, 302 Pa.Super. 528, 449 A.2d 42 (1982). Consolidation is proper if the facts of each offense are easily separable, and evidence of one offense would have been admissible in a separate trial for the other offense.[1] *Commonwealth v. Morris, supra; Commonwealth v. Larkins, supra; Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982); *Commonwealth v. Taylor*, 299 Pa.Super. 113, 445 A.2d 174 (1982); *Commonwealth v. King*, 290 Pa.Super. 563, 434 A.2d 1294 (1981).

1. This standard is now codified in Pa.R.Crim.P. 1127(1)(a), effective July 1, 1982.

The Cooper case involved an attack on Mrs. Cooper, 24 years old, in her home between 6:30 and 7:00 a.m. on November 25, 1980. The assailant slit the screen and forced open a cellar window to enter the home. Mrs. Cooper was in bed asleep at the time. The assailant used the victim's robe to cover her face and thereby hide his identity. The assailant had a strange voice. His speech was mumbled and garbled and hard to understand. He weighed approximately 150 pounds. He threatened the victim verbally and with the use of a knife or sharp object. He penetrated the victim and performed oral sex on her.

Following the attack, it was found that light bulbs in the bathroom adjacent to the victim's bedroom had been removed and placed in the waste basket. Boot impressions were found in the cellar and in the yard. In addition, a small hunting knife was found in the yard.

The McLaughlin case involved an attack on Mrs. McLaughlin, 30 years old, in her home at approximately 7:00 a.m. on February 20, 1981. The assailant entered the home as Mrs. McLaughlin opened the front door to leave for work with her daughter. The assailant opened the door and pushed the victim back into the house. The assailant forced the victim to the couch and told the daughter to go upstairs. His voice was deep and raspy and hard to understand. The assailant threatened the victim verbally, and with a cold, thin, metal object. The assailant pulled the victim's coat over her head, attempting to hide his identity. He penetrated her and forced her to perform oral sex on him. The victim started to fight, there was a knock on the door, and the assailant fled. He wrestled with Officer Albright on the front lawn and then ran away.

Following the attack, it was found that the screen on a rear window of the house had been slit and entry attempted through the window. The globe on an outdoor light near the window was cracked and the bulb unscrewed. Boot impressions were found on the victim's coat and in the yard. Leather gloves were found on the coffee table and a small

knife was found on the couch. The assailant's knit ski hat was found in the front yard.

The homes of the two victims were approximately five blocks apart. The tread of a pair of boots later taken from appellant's home was similar to the impressions found at each of the victims' homes.

Appellant identified the items found at Mrs. McLaughlin's home as his, and he gave a statement to the police implicating himself in the attack on Mrs. McLaughlin. Appellant was also identified by Mrs. McLaughlin as her assailant.

Mrs. Cooper did not see her assailant and did not identify appellant. In addition, appellant denied having attacked Mrs. Cooper, and said that he was at home in bed at the time.

Given these facts, we hold that the trial court did not abuse its discretion in consolidating the two informations for trial. With respect to the first factor to be considered in determining the propriety of consolidation, the facts of each offense were easily separable and involved no complicated fact situations that could lead to confusion. The primary issue in each case was the identification of the assailant. With respect to the second factor, evidence of either one of the offenses would have been admissible to show appellant's *modus operandi* in a separate trial for the other. While as a general rule, evidence of other crimes committed by a defendant is not admissible, *see Commonwealth v. Morris, supra,* such evidence is admissible for certain limited purposes, one of which is to prove the defendant's identification, *id.* Evidence of a defendant's *modus operandi* is admissible to prove identification if there is "such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others." *Commonwealth v. Morris,* 493 Pa. at 176, 425 A.2d at 721. Here, this standard was met. The offenses were committed approximately three months apart in homes approximately five blocks apart; both were committed be-

tween approximately 6:30 and 7:00 a.m.; both were committed in the victim's home; in both cases a screen was slit and entry made or attempted through a window; in both cases the victim was threatened verbally and with a knife; in both cases the assailant covered the victim's face; both victims were forced to engage in oral sex; in both cases the assailant spoke in a strange voice and was difficult to understand; and the boot prints found in both cases were similar. Given the variety of circumstances in which rape is committed, the similarities in these two cases make it very unlikely that the rapes were committed by different persons. *See Commonwealth v. Morris, supra* (consolidation proper: two robberies, five days apart, committed in elevators located in adjoining buildings, between 6:30 and 7:00 p.m., each victim was woman with small children, assailant searched underclothing of each victim); *Commonwealth v. Larkins, supra* (consolidation proper: all three offenses occurred in early morning hours within three mile area, all victims were attacked from behind, each assailant wore leather gloves, methods of assault were similar, each victim's purse was taken, two of stolen purses were found in defendant's apartment); *Commonwealth v. Booth,* 291 Pa. Super. 278, 435 A.2d 1220 (1981) (evidence of prior offenses properly admitted: all involved inmate in county jail being invited to sheriff's quarters and offered alcohol, appellant then made sexual advances to each inmate, and sexual activity was always of some variety); *Commonwealth v. King, supra* (consolidation proper: both offenses involved use of same scheme to gain access to victim).

■ Even if an exception to the rule against admitting evidence of other crimes applies, before admitting the evidence the court is required to determine that its probative value outweighs any prejudice to the defendant. *Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977); *Commonwealth v. Claypool,* 317 Pa.Super. 320, 464 A.2d 341 (1983); *Commonwealth v. Taylor, supra; Commonwealth v. Booth, supra; Commonwealth v. King, supra.* Appellant contends that he was prejudiced by the consolidation

because he confessed and was identified in the McLaughlin case, but denied that he was the assailant in the Cooper case. This contention is without merit. As noted, the facts of each offense are easily separable and involved no complicated fact situations. The jury could easily have found appellant guilty in the McLaughlin case but not guilty in the Cooper case if it had believed appellant's alibi defense in the Cooper case.

2

Appellant argues that his recorded statement, played at trial, was involuntary, and therefore should have been suppressed, because of the large volume of alcohol and drugs he had consumed during the 24 hours prior to giving the statement.[2] He also argues that his trial counsel was ineffective for failing to introduce at the suppression hearing available expert testimony regarding the effect that the consumption of this volume of alcohol and drugs would have had on him.

The Commonwealth bears the burden of showing by a fair preponderance of the evidence that a statement was voluntary. *Commonwealth v. Smith,* 487 Pa. 626, 410 A.2d 787 (1980). In reviewing a trial court's determination that a statement was voluntary, we will consider only the prosecution's evidence and so much of the defense's evidence as remains uncontradicted, and we will not disturb the trial court's findings if they are supported by the record. *Commonwealth v. Cruz,* 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). Factors to be considered in determining whether a statement was voluntary include: the age of the defendant; his education; his intelligence; his physical state; the duration and method of interrogation; the conditions of detention; and the advice given to him concerning

2. Appellant also argues that the statement should have been suppressed because when he waived his *Miranda* rights, he was not aware of the nature of the investigation. This issue was not raised below and therefore is waived. Pa.R.A.P. 302(a).

his constitutional rights. *Commonwealth v. Eackles*, 286 Pa.Super. 146, 428 A.2d 614 (1981).

Appellant was taken to the police station at approximately 12 noon. He first made an incriminating statement at approximately 1:00 or 1:30 p.m. and his statement was recorded at approximately 3:00 or 3:15 p.m. Hearing Transcript [H.T.] 246–47.

Appellant testified at the suppression hearing that during the 24 hour period preceding the interrogation he consumed approximately 19 marijuana cigarettes, a quart of wine, several tablets of "speed," four or five bottles of beer, and two tablets of LSD. H.T. 430–36. He also testified that he had had no sleep during this time. H.T. 428.

Countering appellant's testimony was the testimony of several prosecution witnesses. Two of appellant's fellow employees testified that they saw appellant on the morning of February 20, 1981, before he was taken to the police station for interrogation, and that he did not appear intoxicated. H.T. 105, 129. A police officer who saw appellant at this time also testified that he did not appear intoxicated. H.T. 159. A police officer who participated in questioning appellant at the police station testified that although appellant appeared tired, he appeared coherent and rational. H.T. 256. Another officer who participated in the questioning testified that appellant did not appear intoxicated and that although he appeared tired, he was very coherent and alert. H.T. 303, 335–36. Finally, the District Attorney was present at the taping of the statement and he testified that appellant did not appear intoxicated. H.T. 411.

Prosecution witnesses testified, and appellant acknowledged, that he was offered soda, coffee and sandwiches during the course of the questioning. H.T. 269, 287, 445.

In addition, appellant was advised of his *Miranda* rights at three different times. Appellant was advised of his rights before being taken to the police station, and said he understood his rights and was willing to talk. H.T. 153–54. Appellant was again advised of his rights upon arrival at

the station and at that time signed a card waiving his rights. H.T. 232–33. Finally, appellant was advised of his rights before his statement was recorded, and again said that he understood his rights, and also, that he was willing to have his statement recorded. H.T. 292, 485–88.

Before he gave any statement, appellant was repeatedly told that he was free to leave. H.T. 253, 296. Appellant acknowledged this, and said that he wanted to stay to get things cleared up. H.T. 444.

Further, there was no evidence that appellant was tricked into making a statement or physically coerced. Appellant was not handcuffed or restrained in any way. H.T. 237, 287.

■ Considering the above evidence, we hold that the trial court's finding that appellant's statement was voluntary is supported by the record. *Cf. Commonwealth v. Cruz, supra* (sufficient evidence to uphold finding of voluntariness—four Commonwealth witnesses testified appellant did not appear intoxicated).

■ As we have mentioned, appellant also argues that his trial counsel was ineffective for failing to introduce available expert testimony regarding the effect the alcohol and drugs he allegedly consumed would have had on him. This argument is also without merit. Expert testimony is not necessary to prove intoxication. *See Commonwealth v. Guiliano,* 274 Pa.Super. 419, 418 A.2d 476 (1980) (lay witness may give opinion as to intoxication drawn from observation—evaluation of blood test requires expert testimony). In addition, the trial court's determination that the statement was voluntary rested on the competent testimony of several prosecution witnesses who had observed appellant and testified that he did not appear intoxicated. Since the trial court did not believe appellant's testimony, its findings would not have been altered by expert testimony, which would have been based on the assumption that the facts to which appellant testified were true.

■■■

3

■■■ Appellant also argues that the consent that he gave, while he was being questioned, to the search of his house was also involuntary. We reject this argument for the reasons stated above. *See Commonwealth v. Merbah*, 270 Pa.Super. 190, 411 A.2d 244 (1979) (voluntariness of consent to search to be determined by totality of circumstances, with great deference to trial court's decision, given its opportunity to observe witnesses and assess credibility).

4

Appellant also argues that the trial court erred in allowing Mrs. McLaughlin to make an in-court identification of him because, he says, this identification was tainted by Mrs. McLaughlin having viewed him at the police station in suggestive circumstances.

It will be recalled that Mrs. McLaughlin was attacked at approximately 7:00 a.m. on February 20, 1981. That afternoon, a police officer requested that she go to the police station to identify some articles of evidence. Her brother drove her to the station; she was also accompanied by her sister. Upon arriving at the station, Mrs. McLaughlin asked what had been done with the man being held because she did not want to see him. She was told that he had been taken care of and not to worry. Mrs. McLaughlin was led upstairs, where she identified the articles. She was departing with her brother and sister when, through an open door at the end of the hallway, she saw appellant sitting at the end of a table. She immediately told her sister that he was her assailant. H.T. 22–27. The District Attorney testified that at approximately 1:30 p.m. Sergeant Peterson had called about bringing Mrs. McLaughlin to the station for a show-up, but that he had told the sergeant not to do this because it was not close enough to the crime. H.T. 407. Mrs. McLaughlin's sister testified that they were assured by a police officer that the assailant was not in the station. H.T. 70.

█ We will not disturb the trial court's finding that Mrs. McLaughlin's viewing appellant at the police station was not so suggestive as to taint any subsequent identification. There is no evidence that the viewing was contrived by the police. In fact, the District Attorney advised against a showup. In addition, the victim was advised that the assailant was not in the station so that she did not expect to see him there. Finally, the evidence shows that appellant was not handcuffed or restrained in any way. *See Commonwealth v. Wilcox*, 481 Pa. 284, 392 A.2d 1294 (1978) (spontaneous identification of defendant while in custody of police in police station not improper when incident was accidental and not contrived); *Commonwealth v. White*, 447 Pa. 331, 290 A.2d 246 (1972) (uncontrived, spontaneous identification by victim of defendant while handcuffed and sitting on bench in police station not unduly suggestive and not violation of due process); *Commonwealth v. Fucci*, 251 Pa.Super. 156, 380 A.2d 425 (1977) (inadvertent, uncontrived identification by police officer of defendant at police station not suppressed).

█ The trial court also found that even if Mrs. McLaughlin's police station identification of appellant was tainted, the prosecution had established by clear and convincing evidence an independent basis for her in-court identification of him. An in-court identification may be admitted if the court finds that despite the taint, other factors make the in-court identification reliable. *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978); *overruled in part on other grounds, Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979). A general statement of the factors that may be relevant is as follows:

"(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the [out-of-court] identification; (4) any previous identification by the witness of some other person; (5) any previous identification

of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification."

*Commonwealth v. Slaughter, supra,* 482 Pa. at 546, 394 A.2d at 457 (quoting *United States v. Higgins,* 458 F.2d 461 (3d Cir.1972)).

Consideration of these factors in this case shows that Mrs. McLaughlin's in-court identification of appellant was reliable and properly admitted. Mrs. McLaughlin was able to observe her assailant's face from the bottom of his nose to the top of his eyebrows for two to three minutes during the attack, and his full face for three to four minutes while he scuffled with Officer Albright on her front lawn following the attack. H.T. 37, 40–41, 44. In addition, Mrs. McLaughlin identified appellant's picture following the attack and before going to the police station. H.T. 62. Finally the viewing at the police station occurred on the same day as the attack, and as discussed above, was not unduly suggestive.

## 5

Appellant's last argument is that the trial court erred in not granting his motion for change of venue or venire. This argument is without merit. Appellant failed to introduce any evidence of the extent or nature of the publicity regarding the case. Appellant's girlfriend testified that the last statements she had heard regarding the case were approximately five months before the suppression hearing. H.T. 518. The Chief of Police testified that he had never heard any comments made against appellant. H.T. 520. The record therefore was empty of any evidence in support of appellant's motion for a change of venue or venire.

In this regard, appellant argues that his trial counsel was ineffective for failing to introduce into evidence at the suppression hearing copies of prejudicial newspaper, radio and television publicity in support of his motion for a

change of venue or venire. The record does indicate that ⸴ trial counsel had originally intended to introduce such evidence. H.T. 520–21. We are unable to determine from the record the reason for counsel's decision not to introduce it. It may be, as the Commonwealth contends, that any adverse pretrial publicity had dissipated by the time of trial. It may also be, however, that counsel simply did not take the time or make the effort to procure the evidence. We cannot tell from the record.

■ There is no need, however, to remand for an evidentiary hearing on this issue. As has been noted, although the trial court denied appellant's motion for a change of venue or venire, it granted his motion for individual voir dire. During voir dire each prospective juror who said he or she knew anything about the case, either through personal knowledge, discussion with others or the news media, was individually questioned by the court. If the person questioned indicated any doubt regarding his or her impartiality, he or she was stricken for cause. In addition, appellant's trial counsel and counsel for the Commonwealth were given the opportunity to question each prospective juror who had not been excused after questioning by the court. Of 80 prospective jurors, 19 were stricken for cause, 7 were stricken upon defense counsel's peremptory challenge, and 5 were stricken upon the Commonwealth's peremptory challenge. Appellant does not allege and the record does not indicate that this procedure was inadequate to protect his right to a fair and impartial trial or that any juror who served was in any way prejudiced against him. Absent any allegation of prejudice resulting from counsel's alleged ineffectiveness, appellant is not entitled to an evidentiary hearing regarding the basis for counsel's actions. *Cf. Commonwealth v. Metzger*, 295 Pa.Super. 267, 441 A.2d 1225 (1981) (counsel not ineffective for withdrawing motion for change of venue after defendant entered plea of guilty—no basis for believing judge would not be impartial). *See also Commonwealth v. Ford*, 491 Pa. 586, 421 A.2d 1040 (1980) (in order to prevail on theory of ineffective assistance of

counsel on direct appeal, appellant must show act or omission arguably ineffective and also likelihood that he was prejudiced thereby); *Commonwealth v. Wade*, 480 Pa. 160, 389 A.2d 560 (1978) (same).

The judgments of sentence are affirmed.