# Commonwealth v. Brothers

C.P. of Lawrence County, nos. 1257 and 1258 of 2008, C.R.

*Kathleen Fee-Baird, assistant district attorney,* for Commonwealth.

*Bradley G. Olson Jr.,* for defendant.

## OPINION

MOTTO, *P.J.,* September 23, 2010—Before the court for disposition is the Commonwealth's motion to consolidate two pending indictments against defendant Ronald Brothers, docket numbers 1257 and 1258 of 2008. The charges filed against defendant Brothers at docket number 1257 are as follows:

I. Rape by Forcible Compulsion, 18 Pa. C.S.A. Section 3121(a)(1);

II. Rape by Threat of Forcible Compulsion, 18 Pa.C.S.A. Section 3121(a)(2);

III. Robbery, 18 Pa.C.S.A. Section 3701(a)(1)(iii);

IV. Burglary, 18 Pa.C.S.A. Section 3502(a); and

V. Terroristic Threats, 18 Pa.C.S.A. Section 2706.

The charges filed against defendant Brothers at docket number 1258 are as follows:

I. Rape by Forcible Compulsion, 18 Pa.C.S.A. Section 3121(a)(1);

II. Rape by Threat of Forcible Compulsion, 18 Pa.C.S.A. Section 3121(a)(2); and

III. Burglary, 18 Pa.C.S.A. Section 3502(a).

The commonwealth currently seeks to consolidate the two indictments in the interest of furthering judicial economy and convenience. The relevant background of the case and the arguments made by the Commonwealth and defendant follows.

## I. Factual Background

Case 1257 — On March 31, 1998 at approximately 11:00 P.M. victim Michelle Wills fell asleep in the living room of her 203 Park Ave. apartment with her son. At or around approximately 5:00 A.M. Wills awoke to find an African-American male standing over her brandishing a knife against her throat. The assailant told Wills to remain quiet and to "get rid of her kid." Wills attempted to cover her throat, and the assailant ran his knife over her hand causing small marks and cuts. Wills instructed her son to go into the other room and when the child left the assailant used the knife to cut off Wills' clothing.

The assailant attempted to rape Wills but was unable to achieve a full erection. Eventually the assailant was able to achieve penetration, and raped Wills for a short period of time. When the assailant was finished he took Wills'

purse from the end table and removed several items. The assailant then left through the open window through which he had gained his initial entry. Wills called the police and when they arrived she described her attacker as a "black male...kind of heavy set but he was tall." She was taken to St. Francis Hospital (now Jameson South) where a rape kit was performed. DNA evidence was recovered that would eventually be linked to defendant Ronald Brothers through the use of the CODIS system.

Case 1258 — on August 5, 1998, approximately .5 miles and only a few blocks from the residence of Ms. Wills, a second rape occurred in the late night/early morning. Victim Victoria Potts was asleep in the bedroom of her Lincoln Ave. apartment when she was awoken by a her bed shaking at approximately 3:00 a.m.. At first Potts believed that her cats were the cause, but after the shaking continued Potts rolled over to find an African-American male at the foot of her bed. The man was entirely nude other than a ski-mask/cap and white cloth he had covering his face. The man was holding a knife to Potts' eyes and repeatedly told her "don't say a word." Potts purposefully did not get a good look at her attacker out of fear for her life.

The assailant told her to take down her panties, Potts complied and the assailant put down his knife. The assailant then attempted intercourse with Potts. Unable to achieve an erection, the assailant became agitated and began searching for his knife. Potts could feel the knife next to her head, handed it to the assailant and then fearful of what might happen, helped him achieve an erection. The assailant raped Potts for a short period of time and then got off the bed.

After a few minutes Potts glanced down to see if the male had left the room yet, and witnessed him standing near a post of her bed. Based on this quick glance she estimated that he was between 5'6" and 5'8", had medium to dark mocha colored skin, and looked relatively fit. Potts immediately returned her gaze to the ceiling where it remained for several more minutes. Eventually she looked down and the male was gone. Potts then called the police. When the police arrived and questioned Potts, she realized that a window and screen that had been previously closed were raised. It was determined that this was the point of entry through which the male gained access to her apartment. Potts was taken to St. Francis hospital were a rape kit was performed. Eventually the DNA from the rape kit was matched to Ronald Brothers through the CODIS system.

On October 26, 2007 it was determined by the Greensburg Laboratory that the seminal fluid taken from both crime scenes and victims belonged to the same individual. When the DNA was run through the CODIS system, the defendant Ronald Brothers came up as a match. A DNA profile of Mr. Brothers was created from a blood sample and two buccal swabs taken from the defendant on November 7, 2007, and on December 12, 2007 each sample was found to be identical to the DNA left at each crime scene. The chances of the DNA profile being a random match for Mr. Brothers is approximately 1 in 19 quadrillion.

The Commonwealth is now seeking to consolidate case No. 1257 and case No. 1258 in the interest of judicial economy. For consolidation to be proper the commonwealth must prove that the evidence of each

230

of the offenses is such that it would be admissible in a separate trial for the other and that the evidence is capable of separation by the jury with no danger of confusion. Pa.R.Crim.P. Rule 582(a). It is an established rule in the commonwealth that evidence of separate offenses cannot be introduced at trial for a different offense solely for the purpose of demonstrating the defendant's criminal predilection, but such evidence can be introduced if it is for the purposes of showing a common plan, scheme, or design in the commission of multiple crimes or for the purposes of establishing the identity of the perpetrator of a set of crimes. *Commonwealth of Pennsylvania v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981).

The basis of the arguments made by both the commonwealth and the defendant rest on the determination of whether or not sufficient similarities exist between the two crimes to allow the evidence of one to be admitted at trial as evidence of the other. Both the commonwealth and the defendant have cited the case of *Commonwealth of Pennsylvania v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994) to establish the factors the court must consider in deciding whether consolidation is proper. In *Rush*, the Supreme Court of Pennsylvania held that the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed must all be considered. *Id.* at 113, 646 A.2d at 561.

The commonwealth argues that the close proximity of the crimes (mere blocks apart) and the closeness of time between the incidents (only five months), weigh in favor of consolidation. The defendant concedes that the crimes took place in close proximity of one another, but

argues that the five month time period is too remote for consolidation to be proper.

Both the commonwealth and the defendant rely on the case of *Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529 (1999), to make their arguments for and against consolidation. In *Keaton*, the Supreme Court of Pennsylvania allowed the consolidation of three separate sexual assaults and a murder charge stemming from one of the assaults, based on the shared similarities between the three crimes. The Supreme Court identified eight distinct similarities, and based on these similarities held that consolidation of the cases was proper. *Id.* at 457, 729 A.2d at 537.

In support of consolidation, the commonwealth points out that both victims were single white females living on the north side of New Castle only blocks from each other. The crimes too place within a five month period. The two crimes were committed by an African-American using a knife, the sexual assaults both took place in the middle of the night, and both occurred after the perpetrator broke into the residences. In both assaults the perpetrator told the victims to stay quiet and held a knife to the general area of the victims' head. The commonwealth's strongest cited similarity between the two sexual assaults was that in both incidents the perpetrator was unable to achieve a full erection. Finally, the commonwealth argues that because the crimes charged occurred at two different dates and the victims were two different people, and the facts of the crimes are different enough to allow them to be distinguishable by the jury, no undue prejudice to the defendant will occur from the consolidation of the cases.

In arguing against consolidation, the defendant first

concedes the close geographical proximity of the crimes. The defendant however argues that the five month time span is remote enough to weigh against consolidation. Additionally, the defendant relies on the testimony given by the victims to prove there is no common plan, scheme, or design. First, the victims identified two different sized knives used by the assailant in the two crimes, and in the commission of the first sexual assault the knife was used to remove the victims clothing and to cut her hands; the knife was only present in the second assault, it was never used and the perpetrator removed the victim's clothing by hand. Second, in the first assault the assailant was completely clothed and when finished with the assault stole several items from the victim's purse. During the second assault the assailant was completely nude and did not remove anything from the apartment after the assault had ended.

The defendant next argues that the physical characteristics, specifically the ages of the victims, were not consistent. There is a 16-year age difference between the victims that was not present in *Keaton*. In *Keaton* the victims were all of a consistent age (late 20's to 30's). Finally, the defendant argues that the descriptions given by the victims of their respective assailant suggest that the acts were committed by a different perpetrator. Specifically the first victim described her actor as a tall, large framed, dark skinned African-American. The second victim described her assailant as a relatively short, toned, dark mocha colored African-American male.

The last argument put forth by defendant is that assuming a common plan, scheme or design is found, consolidation of the charges will create an undue prejudice

in his trial. The defendant argues that unlike in *Keaton*, the evidence linking defendant to the crimes is not short and simple, but complicated scientific evidence based on comparisons of DNA. The defendant argues that such complex scientific evidence is not easily separated by the jury, and will likely lead them to reach a conclusion based solely on the DNA evidence and not the investigation conducted by the New Castle Police Department or testimony provided by the victims. Because the jury will not easily be able to separate the evidence of the two crimes, the defendant argues that he will face undue prejudice if the charges are consolidated.

## II. Legal Discussion

The commonwealth seeks to consolidate the two sexual assaults in the interest of judicial economy. Pennsylvania Rule of Criminal Procedure 582 provides the standard for consolidating offenses. Pa.R.Crim.P. Rule 582(a) states:

Rule 582. Joinder-Trial of separate indictments or informations

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

The decision whether or not to consolidate indictments for trial rests solely with the discretion of the trial court,

and such discretion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Newman*, 528 Pa.393, 397, 598 A.2d 275, 277 (1991); also see *Commonwealth v. Morris*, 493 Pa. 169, 171, 425 A.2d 715, 718 (1981).

To determine whether or not consolidation is proper, a three-pronged test was developed by the Pennsylvania Supreme Court in the case *of Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988). The Supreme Court held that trial courts must consider the following factors:

> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses. *Id.* at 302, 543 A.2d at 497.

To determine whether or not consolidation of the charges against defendant Brothers is proper each prong of the *Lark* test must be examined in turn.

### II(a). Will the evidence of one crime be admissible at trial for the second?

The first part of the three-pronged test is to determine whether or not the offenses are of such a nature that they would be admissible in a separate trial for the other.

It is a well established principle in the commonwealth that evidence of one distinct crime cannot be admitted against a defendant being tried for another crime because the commission of one similar crime is not proof that a defendant participated in the commission of another.

*Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981). However, the general rule does provide several exceptions to the Prohibition of admissions of separate crimes. Evidence of other crimes may be used to prove (1) intent; (2) motive; (3) absence of mistake or accident; (4) a common plan, scheme, or design embracing commission of multiple crimes; or (5) to establish the identity of the person charged with the commission of the crime on trial. *Id.* at 175, 425 A.2d at 720. Of the exceptions, the fourth and fifth exceptions are at issue in the case before the court. In *Morris,* the Supreme Court of Pennsylvania interpreted these exceptions to mean that:

> The commonwealth must show more than the other crimes are of the same class as the one for which the defendant is being tried. Rather, there must be such a high correlation in the details of the crime that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others. *Id.* at 176, 425 A.2d at 721; see also *Commonwealth v. Fortune,* 464 Pa. 367, 372-73, 346 A.2d 783, 786 (1971).

Essentially the crimes must be so distinctive or unusual that the commission of the crimes could be identified as a "signature" of the defendant. *Morris,* at 176, 425 A.2d at 720.

In determining whether crimes are so similar as to be considered the "signature" of the defendant, several factors to be considered have been identified. The time elapsed between the crimes, the geographical proximity of the crime scenes and the similarity in manner in which the crimes were committed must all be taken into consideration. *Commonwealth v. Rush,* 538 Pa. 104, 113, 646 A.2d

557, 561 (1994). Of these factors, the Supreme Court of Pennsylvania has repeatedly held that the remoteness in time between the commission of crimes is inversely proportional to the degree of similarity between the crimes at issue. In other words, the more similar the commission of the crimes, the less the remoteness of time between the commission of the crimes matters. *Commonwealth v. Clayton*, 506 Pa. 24, 33, 483 A.2d 1345, 1350 (1984); see also *Commonwealth v. Miller*, 541 Pa. 531, 549, 664 A.2d 1310, 1319 (1995); see also *Commonwealth v. Shively*, 492 Pa. 411, 415, 424 A.2d 1257, 1259 (1989).

A review of Pennsylvania case law lends guidance in determining whether consolidation of the cases before the court today is proper. In *Commonwealth v. Robinson*, 581 Pa. 154, 864 A.2d 460 (2004) the Pennsylvania Supreme Court allowed the consolidation of four separate informations based on the similarities between the four crimes. In *Robinson*, an assailant committed a string of brutal and savage sexual assaults over the course of 11 months on four women in the Allentown area whose ages ranged from 15 to 47. Appellant argued that spatially and temporally the crimes were too remote to consolidate and that even if they were spatially and temporally sufficient, there was no real connection between the ways the crimes were committed and therefore consolidation of the charges was improper. *Id.* at 190, 864 A.2d at 481.

The Supreme Court held that spatially the crimes were not too remote. All the crimes took place in the same general locale of the east side of Allentown, within blocks of where the appellant lived or used to live. In addition, the 11-month time span was not so remote as to make consolidation improper. Citing several cases that

had temporal spans from three years to 18 months to 10 months, the court found that 11 months was not too remote a time. *Id.* at 192, 864 A.2d at 482; citing *Commonwealth v. Newman*, 528 Pa. at 399, 598 A.2d at 278 (1991); *Commonwealth v. Hughes*, 521 Pa. 423, 459, 555 A.2d 1264, 1282-83 (1989); and *Commonwealth v. Donahue*, 519 Pa. 532, 545, 549 A.2d 121, 127-28 (1988).

Regarding the appellant's final argument that joinder was improper because no "real relationship" existed amongst the crimes, the Supreme Court had this to say:

Nothing can be further from the truth, however. None of the victims knew or had any prior contact with appellant. All were savagely beaten and raped within two months of appellant leaving the Allentown area and two and one-half months of his return to that locale. Each of the victims was brutally murdered at close range by hand or a hand-held instrument. In each case, appellant left behind virtually no incriminating physical evidence, with the exception of what was subsequently discovered through microscopic scientific examination. In all three cases, samples of appellant's DNA were recovered from the crime scenes. Each attack was committed at night or in the early morning hours. Finally, all victims shared the same personal characteristics-they were overweight, white females, who lived in and around the East Allentown area. *Robinson* at 192-93, 864 A.2d at 482-83.

The shared similarities between the crimes were enough for the Supreme Court to find that consolidation of the indictments was proper. In regards to potential prejudice to the appellant, the court held that the evidence of the crimes could be easily separated by the jury. The crimes

238

were perpetrated against different victims and no overlap of physical evidence amongst the crimes was present. *Id.* at 193, 864 A.2d at 483.

Factually similar to the case currently before the court, is the case of *Commonwealth v. Laurenson*, 470 A.2d 122 (1983). At issue in *Laurenson* was the consolidation of two rapes that had taken place in the same general neighborhood over a span of five months. The appellant argued that consolidation of the rapes would unduly prejudice him, and that beyond any undue prejudice the sexual assaults were not similar enough for consolidation to be proper. *Id.* at 124. The Supreme Court found no undue prejudice resulted from the consolidation. The evidence of the two crimes was easily separable by the jury and there were no complicated fact patterns that could have led to jury confusion. *Id.* at 125.

The Supreme Court found that the similarities between the two incidents were more than sufficient to justify consolidation of the charges. The court stated that evidence of the defendant's modus operandi is admissible to prove identification when there is such a high correlation between the crimes that proof of one makes it unlikely that anyone but the defendant committed the other. *Id.* at 125 (citing *Commonwealth v. Morris*, 425 A.2d at 721). Regarding the characteristics of the crimes the court stated:

> The offenses were committed approximately three months apart in homes approximately five blocks apart; both were committed between approximately 6:30 and 7:00 a.m.; both were committed in the victim's home; in both cases a screen was slit and entry made or attempted through a window: in both cases the victim was threatened verbally and with a knife; in both cases

the assailant covered the victim's face; both victims were forced to engage in oral sex; in both cases the assailant spoke in a strange voice that was difficult to understand; and the boot prints found in both cases were similar. Given the variety of circumstances in which rape is committed, the similarities in these two cases make it very unlikely that the rapes were committed by different persons. *Id.* at 125.

There were enough distinctive similarities between the two sexual assaults for the Court to find consolidation of the cases proper. *Id.* at 125.

*Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529 (1999), has been cited by both the commonwealth and the defendant in support of their respective positions. *Keaton* involved a string of sexual assaults and a murder that took place over the course of a six month span in the same general neighborhood. The appellant challenged the consolidation of the charges as not being similar enough to demonstrate a common plan, scheme, or design. *Id.* at 458, 729 A.2d at 537. The Supreme Court found that enough distinctive similarities existed between the charges for consolidation to be proper. The court specifically named the following similarities:

1) the offenses were committed over a period of less than six months; 2) each was committed at night; 3) in each case, Keaton forced his victim into an abandoned house; 4) the abandoned houses were all in the same neighborhood in which Keaton and the victims lived; 5) the abandoned houses were within a two-block radius of each other; 6) each offense involved a combination of bondage or strangulation of the victim; 7) each offense involved the rape of the victim; and 8) all victims shared

similar personal characteristics: all were black females in their late twenties or thirties, all were acquainted with Keaton, and all were crack cocaine addicts. *Id.* at 458, 729 A.2d at 537.

Taken together, these eight characteristics were distinct and similar enough to separate the chain of sexual assaults from what would ordinarily have occurred in regular street crime. Addressing any undue prejudice that the appellant may have faced, the court held that the evidence of the crimes was easily separable by the jury. Each crime was perpetrated against a different victim, there was no overlap of physical evidence, and the evidence of each offense was short and simple. *Id.* at 458, 729 A.2d at 538.

In *Commonwealth v. Bryant*, 515 Pa. 473, 530 A.2d 83 (1987), the Supreme Court found that a lack of sufficient similarities between two incidents mandated the exclusion of testimony regarding a prior assault at the defendant's current trial. The court acknowledged that there were similarities between the two crimes, but those similarities were "confined to relatively insignificant details that would likely be common regardless of who had committed the crimes." *Id.* at 479, 530 A.2d at 86. The commonalities between the crimes included that 1) both crimes took place shortly after midnight only two months apart; 2) in the homes of elderly individuals; 3) both victims were severely beaten; 4) both homes were ransacked; 5) the perpetrator of both crimes was seen wearing a dark jacket; and 5) both crimes took place in the Germantown section of Philadelphia. *Id.* at 479, 530 A.2d at 86.

The Supreme Court founds these commonalities to be insufficient in so far as it is common for burglaries to occur at night and homes are generally ransacked during home

invasions. *Bryant* at 479, 530 A.2d at 86. In regards to the similarity between the victims (location and physical characteristics), the court stated that elderly victims in major urban areas are often targeted for crimes of this nature. *Id.* That both perpetrators were seen wearing a dark jacket was also insignificant because it is not unusual for individuals to be wearing dark colored jackets. *Id.* Further, the court stated that there were many differences between the two crimes, not the least of which was the fact that the perpetrator of the first home invasion defecated on the floor of the house he invaded. *Id.* The court declined to address any further differences as the lack of distinct commonalities beyond a normal criminal enterprise was enough to find the inclusion of testimony regarding the first home invasion improper in the defendant's trial for the second home invasion. *Id.* at 479, 530 A.2d at 86.

In *Commonwealth v. Patterson*, 484 Pa. 374, 399 A.2d 123 (1979), the Supreme Court of Pennsylvania held that evidence of an earlier rape was improperly admitted into the defendant's trial for the purpose of proving identity and common plan, scheme, or design. At the appellant's earlier trial, the Superior Court found that introduction of evidence of the first rape was proper in the defendant's trial for the second rape. The Superior Court based its holding on the following similarities:

> The prosecutrix was accosted approximately the same time of night as the other rape victim, the two crimes were only five days apart and occurred in the same two-block area, and the attacker of both women wore sunglasses even though it was nighttime. The prosecutrix was taken into a garage in an alley; the other victim was being taken into an alley at gunpoint

when she managed to talk her assailant into taking her indoors. *Id*. at 378, 399 A.2d at 126.

Examining the circumstances of the two sexual assaults the Supreme Court disagreed with the conclusion reached by the Superior Court. In reaching its decision, the court relied on the lack of distinctive similarities between the two sexual assaults that could have separated the crimes from other ordinary street crime and no the dissimilarities between the crimes. *Id*. at 380, 399 A.2d at 127.

The dissimilarities between the crimes included that the victims were of totally different ages and sexual attractiveness; different weapons were used in each incident (a gun and an ice-pick); one incident occurred in a garage while the other occurred in the defendant's apartment; in one incident the perpetrator was wearing rose-colored sunglasses, in the other the perpetrator was wearing dark sunglasses; and the first rape involved a Robbery and choking the victim until she passed out then tying her up, no such incident occurred with the second rape. *Patterson, Id*. at 380, 399 A.2d at 127. These dissimilarities and the lack of any distinctive traits that separated the assaults at issue from other street crimes made introduction of the testimony of the earlier assault improper. *Id*. at 380, 399 A.2d at 127.

The five cases discussed above reveal that the number of similarities between the charges sought to be consolidated is not the dispositive factor in determining whether consolidation is proper. Instead, what has mattered most to the rationale of the Supreme Court was whether the similarities between the crimes were so distinct that one could logically conclude that is highly unlikely anyone but the same individual committed the

crimes. Put another way, the inquiry is whether there are enough distinct similarities in the commission of the crimes charged to separate the commission of those crimes from that of normal street crime of a similar nature. See *Laurenson* at 53, 470 A.2d at 125; *Bryant* at 478, 530 A.2d at 86; and *Patterson* at 380, 399 A.2d at 127.

Applying this standard to the case sub judice, the distinct similarities needed for consolidation of the charges to be proper are present. Looking at the similarities between the sexual assault on Ms. Wills and the sexual assault on Ms. Potts, a logical connection between the two crimes is discernible. 1) Both victims were single Caucasian women living on the north hill of New Castle; 2) the attacks occurred mere blocks from each other; 3) the attacks both occurred in the late evening/early morning hours; 4) the attacks took place within a five-month span; 5) the assailant of both victims broke into the apartment through a window; 6) the assailant was identified by both women as an African-American; 7) the assailant threatened both victims verbally and with a knife; 8) both victims awoke to find a man standing over them; and 9) in both cases the assailant was unable to achieve a full erection. When the wide variety of ways in which rape can be committed is considered, the distinct similarities between the two crimes charged against defendant Brothers make it very unlikely that the rapes were committed by different actors. *Laurenson* at 53, 470 A.2d at 125.

Further separating the two sexual assaults from common street crime is the evidence that defendant Brothers' DNA was recovered from both crime scenes. The presence of defendant's DNA at both crime scenes is similar to the situation in *Robinson* where the only physical evidence

linking Robinson to his crimes was the DNA found at the crime scenes. *Robinson* at 193, 864 A.2d at 483. The Supreme Court used the presence of Robinson's DNA to help strengthen the establishment of a "real relationship" between the crimes Robinson was accused of; and likewise the presence of defendant Brother's DNA at the crime scenes in the case sub judice can be used similarly. *Id.* at 483. The similarities between the crimes defendant Brothers is charged with and the presence of his DNA at both crime scenes are more than just insignificant details common to any street crime. These facts create a logical connection that makes it highly unlikely anyone but defendant Brothers could have perpetrated the acts.

Before the court can conclude that consolidation is proper, the dissimilarities between the two crimes, as pointed out by defendant, must be addressed. Defendant points out that in each assault a different knife was used. In the first assault the knife was used on the victim whereas in the second assault it was only used to threaten. Further, in the first assault the victim had her clothes cut from her body, in the second the assailant removed them by hand. Additionally, in the first assault the assailant remained completely clothed during the assault, whereas in the second assault the assailant was naked when the victim awoke. In the first assault the victim was also robbed, which did not occur in the second assault. The descriptions provided by the victims were not identical. Finally, the physical characteristics of the victims, namely the sixteen year age disparity between them, are not consistent.

Addressing the dissimilarities pointed out by defendant, first the difference in size and use of the weapons is not so great as to make consolidation of the indictments improper.

In *Robinson*, where consolidation was found proper, the assailant used a variety of weapons on his victims. He used a small cylindrical metallic object on his first victim, a knife with a four-inch blade on the second, a butcher knife and his fists on the third, and finally only his fists on the fourth victim. *Robinson* at 175-78, 864 A.2d at 472-74. The difference in the weapons used in *Robinson* greatly exceeds the difference in blade size that defendant argues weighs against consolidation. As such this dissimilarity should not cause consolidation to be improper.

The age disparity between the victims is another dissimilarity that does not weigh against a finding of consolidation, while it is true that the victims in *Keaton* all were in their late 20's or 30's, the victims in *Robinson* ranged in age from 15 to 47. *Keaton* at 457, 729 A.2d at 537; *Robinson* at 175-78, 864 A.2d at 472-74; also see *Commonwealth v. Newman*, 528 Pa. 393, 399, 598 A.2d 275, 278 (consolidation of two rapes proper despite 14 year age gap between victims). Considering the wide age disparity in cases in which the Supreme Court has held consolidation proper, the fact that the victims in the current case have an age gap of 16 years does not weigh against a finding that consolidation is proper.

The remaining dissimilarities referenced by the defendant, namely that Ms. Wills was also robbed, that the assailant of Ms. Potts was totally nude while Ms. Wills assailant remained clothed, and the difference in physical descriptions given by the victims of their attacker cannot be dismissed through case law. However, when contrasted with the similarities between the two assaults and with the fact that defendant's DNA was recovered from both the crime scenes and the victims, the necessary logical

connection that separates the two assaults from other street crime can be formed.

In both incidents the assailant was an African-American male who broke into the victims' apartments through a window, both apartments were within blocks of each other, the attacks occurred during roughly the same time of night, both victims were threatened verbally and with a knife, and in both instances the assailant was unable to achieve a full erection. Finally, the DNA of defendant was recovered from both victims. These similarities establish a logical connection between the crimes such that it seems highly unlikely that anyone but the same assailant could have committed both acts. Therefore, the evidence of one crime could be properly admitted at the trial of the other. See *Laurenson* at 53, 470 A.2d at 125; *Bryant* at 478, 530 A.2d at 86; and *Patterson* at 380, 399 A.2d at 127.

## II(b). Is the evidence capable of separation by the jury?

Having established that evidence of either crime alleged to have been committed by defendant could be introduced at the trial for the other, the court must now address the second part of the *Lark* test. The second prong of the *Lark* test asks whether the evidence of the crimes is of such a nature that it can be easily separated by the jury so as to prevent a melding of the relevant evidence of each crime. *Commonwealth v. Lark*, at 302, 543 A.2d at 497. In deciphering a standard from which to test this prong, Pennsylvania courts have found guidance in a case decided by Judge Learned Hand. *Commonwealth v. Keaton*, at 459, 729 A.2d at 538; *Commonwealth v. Peterson*, 453 Pa. 187, 200, 307 A.2d at 264, 271. In *U.S. v. Lotsch*, 102 F.2d 35

(1939), Judge Learned Hand stated:

> When the accused's conduct on several separate occasions can properly be examined in detail...the only consideration is whether the trial as a whole may not become too confused for the jury... Here we can see no prejudice from joining the three charges: the evidence to each was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each. The joinder was therefore proper. *Lotsch*, 102 F.2d at 36.

The courts have used this opinion to find consolidation proper when the evidence of the crimes sought to be consolidated is short and simple, and no reasonable grounds for believing that the jury could not keep the information separate exists. *Keaton* at 458, 729 A.2d at 538; *Peterson* at 200, 307 A.2d at 271.

The defendant has argued that the presence of DNA in both crimes necessarily means that the evidence is not short and simple and cannot be easily separated by the jury. This is an issue that the Supreme Court of Pennsylvania has already ruled on. In *Commonwealth v. Robinson*, one of the main pieces of evidence tying Robinson to his crimes was the presence of his DNA at the crime scenes. *Robinson* at 193, 864 A.2d at 483. In assessing the similarities between the crimes, the Supreme Court held that the presence of Robinson's DNA was another contributing factor in finding that a relationship existed among the crimes the commonwealth was seeking to consolidate. *Id.* at 193, 864 A.2d at 483. The court never expressed concerns over the possibility that the nature of DNA evidence would so confuse the jury as to make separation of the charges impossible.

The Supreme Court went on to state that because each crime was committed against a different victim and there was no overlap of physical evidence between the crimes, the evidence concerning each incident (including the DNA evidence) was readily separable by the jury. *Id.* at 193, 864 A.2d at 483. Defendant's main argument against the ability of the jury to separate the evidence is the fact that DNA evidence links defendant Brothers to both crime scenes. But as was the case in *Robinson*, the crimes defendant is accused of committing are against different victims and no overlap of physical evidence exists between the incidents. In this regard, the holding of *Robinson* is directly on point and its precedential value strongly weighs against defendant's contention that the DNA evidence will not be easily separable by the jury. *Id.* at 193, 864 A.2d at 483.

Apart from the issue of possible jury confusion over DNA evidence, the rest of the evidence in the two cases is short, simple and so distinguishable that the two crimes can be easily separated by the jury. The Supreme Court has repeatedly held that when evidence is easily distinguishable, short, simple, and there is no overlap of physical evidence, then no reasonable belief exists that the jury will be unable to keep relevant facts of each crime separate. *Commonwealth v. Keaton* at 459, 729 A.2d at 538; *Commonwealth v. Peterson* at 200, 307 A.2d at 271; *Commonwealth v. Laurenson* at 53, 470 A.2d at 125.

In the case before the court, both crimes were committed against different victims over a five-month time span, and there is no overlap of physical evidence between the two crimes. The victims lived at separate addresses; one victim had a son who was present during

the assault; in one assault the assailant cut the clothes from the victim, in the other he removed them by hand; the assailant was fully clothed in one assault and nude for the other; and only the first victim was robbed by her assailant. These differences are distinct enough that the jury will be able to easily separate the two incidents, and therefore no reasonable grounds for believing that the jury will be unable to keep relevant evidence separated exists.

A matter of final interest regarding this prong of the Lark test is the holding of the Pennsylvania Supreme Court in *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973). In *Peterson,* the Supreme Court held that a proper and explicit jury instruction will help to prevent any confusion or commingling of relevant evidence of the two crimes. *Id.* at 200, 307 A.2d at 271. Initially at the beginning of trial, the judge informed the jury that they were actually trying two distinct cases at once and for that reason would need to pay "especially close attention to the evidence so as to properly segment it." *Id.* at 201, 307 A.2d at 271. And then at the close of trial, the judge gave an extensive cautionary instruction to the jury which directed them to confine the relevant evidence of each offense to that offense and that offense only. *Id.* at 201, 307 A.2d at 271. In the opinion of the Supreme Court, these jury instructions helped to ensure that the jury would keep all the relevant evidence separate and weighed in favor of finding consolidation of the indictments at issue proper. *Id.*

Based on the distinguishable nature of the two crimes, the short and simple evidence for both crimes, the Supreme Court's holding in *Robinson* that DNA evidence is separable by a jury, and the court's ability to give proper

and explicit instructions to the jury, the consolidation of the two cases before the court today will pass the second prong of the *Lark* test.

### II(c). Will the consolidation of the cases create undue prejudice against the defendant?

The third prong of the Lark test states that if the first two prongs are answered in the affirmative then the court must consider whether or not consolidation will unduly prejudice the defendant. *Lark*, 543 A.2d at 496. The Supreme Court defined the type of prejudice that could possibly arise from consolidation as:

> The "prejudice" of which Rule 1128 (now Rule 582) speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of *all* commonwealth evidence. The prejudice of which Rule 1128 (now Rule 582) speaks is, rather, that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. *Lark*, 543 A.2d at 499.

As has been established in section II(a), it would be proper to admit the evidence of either of the two crimes charged against defendant Brothers into a separate trial for the other on the basis of showing the defendant's modus operandi and to prove identity. The evidence is not being presented to show that defendant has a propensity to commit crime, but rather to show that because of the distinct similarities between the two crimes, they could

not have logically been committed by any other individual. The evidence will show defendant's signature, not that he is the type of person who has predilection towards committing crime.

The second type of potential prejudice that concerned the Supreme Court in *Lark*, whether or not the jury can separate the evidence, has also been fully addressed. The evidence for both of the crimes is short and simple, there is no overlap of physical evidence between the two crimes, and there are enough distinguishing features that with proper jury instructions the jury should be able to fully separate the relevant evidence of each crime.

The last type of potential prejudice, whether or not the jury will be able to avoid cumulating the evidence was addressed by Judge Hand in *U.S. v. Lotsch*, 102 F.2d 35. Judge Hand acknowledged that when several crimes are tried together there is always a distinct danger that the jury may use the evidence cumulatively. This danger, however, can be dissipated when the separate conduct of the accused can be properly examined in detail. *Id.* at 53. If the evidence is short and simple, and reasonable grounds for believing that the jury will not be able to keep relevant evidence separate do not exist, then the danger of the jury cumulating evidence is eliminated or greatly reduced. *Id.* at 53. It is up to the discretion of the trial court to examine the evidence and determine if it such that jury will be able to keep the relevant evidence separate. *Id.* at 53. In the instant case, the evidence is short and simple and there are enough distinguishing characteristics that the jury should have no problem keeping relevant evidence separate.

Therefore, the defendant will not face undue prejudice from the jury potentially cumulating the evidence.

The evidence in the crimes sought to be consolidated before the court today is such that the third and final prong of the *Lark* test, whether consolidation will unduly prejudice the defendant, is satisfied. The evidence is short, simple, and easily separable by the jury and consolidation of the charges will not result in undue prejudice towards defendant Brothers.

## III. Conclusion

Based on the foregoing discussion, the facts of the two crimes defendant Brothers is accused of are sufficiently similar to establish the logical connection required by the Supreme Court of Pennsylvania for consolidation to be proper. There are enough distinctive similarities between the two crimes to separate them from regular street crime, and the facts of the cases are short and simple enough that the relevant evidence for each individual crime will be easily separable by the jury. Therefore, the court should approve the commonwealth's motion to consolidate the cases.

## ORDER OF COURT

And now, this September 23, 2010, for the reasons set forth in the accompanying opinion of even date herewith it is ordered, adjudged and decreed that the Commonwealth's Motion to Consolidate is granted, and the above captioned cases are hereby consolidated for trial.